Anthony ZERILLI and Michael Polizzi, Appellants,

v.

The EVENING NEWS ASSOCIATION, et al.

No. 79–1298.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 7, 1980.

Decided June 11, 1980.

Sol Z. Rosen, Washington, D. C., for appellants.

E. Anne McKinsey, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty. at the time the brief was filed, John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for federal appellees.

Richard L. Cys, Washington, D. C., for appellee The Evening News Association. Stuart F. Pierson, Washington, D. C., also entered an appearance for appellee The Evening News Ass'n.

Before McGOWAN, TAMM and WALD, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this case, we must decide the merit of statutory and constitutional claims for monetary damages resulting from the disclosure of information originally obtained in violation of the fourth amendment. More specifically, we must determine whether 18 U.S.C. § 2520 (1976), which establishes a civil remedy for the disclosure of information obtained by unlawful surveillance, supports a cause of action when the surveillance occurred before, but the disclosure after, the effective date of the section. In addition, we must decide whether a private newspaper may be held liable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for conspiring to have federal officials disclose information that had been obtained in violation of the Constitution. We conclude that neither section 2520 nor *Bivens* imposes liability in the circumstances of this case, and we therefore affirm the district court's dismissal of the complaint.

## I. THE FACTUAL BACKGROUND

On May 1, 1978, plaintiffs Anthony Zerilli and Michael Polizzi filed an action in the United States District Court for the District of Columbia against the Attorney General and other, unknown agents of the United States Department of Justice (the federal defendants) and against The Evening News Association, the publisher of *The Detroit News* (the newspaper). Plaintiffs alleged that the Department of Justice, in the early 1960's, had unlawfully "bugged" the office of the Home Juice Company in Detroit, Michigan, intercepting certain communications between plaintiffs and others. Some ten to fifteen years later, in 1976, agents of the Department allegedly disclosed the contents of these communications to the newspaper, which then published the material in a series of articles entitled "Organized Crime in Detroit."

Plaintiffs asserted three legal theories in seeking compensatory and punitive dam-

ages. First, they charged the defendants with violating 18 U.S.C. § 2511(1)(c) (1976), which prohibits certain disclosures of intercepted communications, and claimed that 18 U.S.C. § 2520 therefore entitled them to a civil recovery. Second, plaintiffs asserted a right to recovery against the federal defendants based directly on the fourth amendment. Finally, plaintiffs contended that they were entitled to relief against the newspaper on the ground that it had conspired with the federal defendants to violate plaintiffs' fourth amendment rights.[1] The federal defendants and the newspaper each moved to dismiss the complaint for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6). Judge Oliver Gasch granted the motions and dismissed the complaint. This appeal followed.

## II. PLAINTIFFS' CLAIM UNDER 18 U.S.C. § 2520

In 1968, as title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, Congress enacted chapter 119 of title 18 of the United States Code, which addresses a variety of issues concerning wiretapping and other interceptions of wire and oral communications. *See* 18 U.S.C. §§ 2510–2520 (1976) (amended in part 1978). Chapter 119 "has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the in-

terception of wire and oral communications may be authorized." S.Rep. No. 1097, 90th Cong., 2d Sess. 66, *reprinted in* [1968] U.S. Code Cong. & Admin.News, pp. 2112, 2153. As the Supreme Court has observed, "The Act represents a comprehensive attempt by Congress to promote more effective control of crime while protecting the privacy of individual thought and expression." *United States v. United States District Court*, 407 U.S. 297, 302, 92 S.Ct. 2125, 2129, 32 L.Ed.2d 752 (1972).

Chapter 119 authorizes the interception of wire and oral communications only under specified conditions and only upon prior judicial approval. *See* 18 U.S.C. §§ 2516, 2518(1)–(8) (1976) (amended 1978). Interceptions not conforming to these requirements generally are unlawful, *see id.* § 2511, and the unlawfully obtained information may not be used as evidence in a legal proceeding, *see id.* § 2515 (1976); *see also id.* § 2518(9)–(10) (amended 1978). Moreover, the statute makes it a criminal offense to engage in an unlawful interception or to disclose or use information that was obtained by such means. *See id.* § 2511(1) (1976). Section 2520 of chapter 119, the section relied upon by plaintiffs here, provides a civil cause of action for the victim of an unlawful interception against any person who intercepts, discloses, or uses the plaintiff's communications in violation of the chapter. *Id.* § 2520. A successful claimant may recover actual and punitive damages, as well as attorneys' fees. *Id.*[2]

---

1. Plaintiffs' second and third theories appeared in an "amended complaint." *See* Joint Appendix (J.A.) at 7. It is unclear from the record whether this pleading was actually filed, although the district court did consider its contents in ruling on the motions to dismiss. *See Zerilli v. Detroit News*, Civ. No. 78–0766, at 3–4 (D.D.C. Jan. 25, 1979) (memorandum and order) [hereinafter cited as District Court Memorandum], *reprinted in* J.A. at 12, 14–15. Because we conclude that, even as amended, the complaint does not state a claim upon which relief may be granted, we need not decide whether the amended complaint would also fail for any procedural irregularity.

2. Section 2520 reads in its entirety as follows:
   Any person whose wire or oral communication is intercepted, disclosed, or used in

violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications and (2) be entitled to recover from any such person—
   (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
   (b) punitive damages; and
   (c) a reasonable attorney's fee and other litigation costs reasonably incurred.
A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law.

■ Section 2520, along with the rest of chapter 119, went into effect on June 19, 1968. In the case before us, the alleged disclosures—first by the federal defendants, and then by the newspaper—occurred in 1976, after chapter 119 was in force. The interception that allegedly produced the disclosed information, on the other hand, occurred in the early 1960's, well before the statute's effective date. Thus, the issue we must resolve is whether section 2520 provides a remedy for the post-enactment disclosure of information that was unlawfully obtained through a pre-enactment interception.[3]

■ The starting point in construing any statute is the language of the statute itself, *see, e. g., Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980), and if that language is clear, the judicial inquiry ends, for a court must give effect to a statute's unambiguous meaning. As the Supreme Court observed in *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed . . . . Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." *Id.* at 485, 37 S.Ct. at 194. *See also United States v. Davis*, 617 F.2d 677 at 682 (D.C.Cir. 1979).

Enforcing the literal language of Congress is especially important in the present case. Chapter 119 represents a "comprehensive scheme" for the regulation of wiretapping and other interceptions of wire and oral communications, *see Gelbard v. United States*, 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972), a scheme that was drafted . . . with exacting precision. As its principal sponsor, Senator McClellan, put it:

"[A] bill as controversial as this . . . requires close attention to the dotting of every 'i' and the crossing of every 't' . . . ." [114 Cong.Rec.] 14751 [(1968)].

Under these circumstances, the exact words of the statute provide the surest guide to determining Congress' intent, and we would do well to confine ourselves to that area.

*United States v. Donovan*, 429 U.S. 413, 441, 97 S.Ct. 658, 675, 50 L.Ed.2d 652 (1977) (Burger, C. J., concurring in part and concurring in the judgment).

■ Section 2520 provides a remedy when a person's communications are "intercepted, disclosed, or used *in violation of this chapter*." 18 U.S.C. § 2520 (1976) (emphasis added). To identify such a violation in the present case, plaintiffs contend that defendants violated section 2511(1)(c) after the effective date of chapter 119 by making unlawful disclosures of information. A disclosure is unlawful under section 2511(1)(c), however, only if the information disclosed was "*obtained* through the *interception* of a wire or oral communication *in violation of this subsection.*" *Id.* § 2511(1)(c) (emphasis added). Thus, for a *disclosure* to be unlawful under chapter 119, the information disclosed must have been obtained through an *interception* that itself violated the provisions of the chapter. Obviously, the interception in the present case could not have violated chapter 119, for its provisions had

---

18 U.S.C. § 2520 (1976). *See generally* Annot., 25 A.L.R.Fed. 759 (1975).

**3.** Although, in a general sense, the issue we confront is one of "retroactivity," our task actually is to determine whether conduct occurring *after* the effective date of ch. 119—*i. e.*, the disclosure of certain information—is conduct proscribed by the chapter and thereby conduct giving rise to civil liability under § 2520. Plaintiffs do not dispute that ch. 119 applies only to conduct occurring after the effective date of the enactment, *see, e. g., United States v. American*

*Radiator & Standard Sanitary Corp.*, 288 F.Supp. 701 (W.D.Pa.1968), but instead contend that the disclosure of plaintiffs' intercepted communications, which disclosure occurred after that effective date, violated the chapter regardless of when the illegal interception occurred. To our knowledge, we are the first appellate court to deal with the issue of whether a post-enactment disclosure gives rise to liability under § 2520 when the communications were unlawfully intercepted before ch. 119 took effect.

not yet been adopted at the time the interception occurred.[4] Because the interception did not violate the chapter, the subsequent disclosure also fell outside its provisions; therefore, no liability could arise under section 2520. *See Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971) (denying recovery under section 2520) ("Since . . . the interception . . . was not obtained in violation of the Act, its subsequent use and disclosure was not a violation of the Act."). *See also Smith v. Cincinnati Post & Times-Star*, 475 F.2d 740, 741 (6th Cir. 1973) (per curiam).[5]

Contrary to plaintiffs' contention,[6] our adherence to the plain meaning of the statute will not create a "carte blanche" for the liability-free disclosure of communications that were unlawfully intercepted prior to the effective date of chapter 119. In appropriate cases, other remedies for such disclosures may exist. For example, if all the elements can be shown, a common-law tort action may lie for invasion of privacy. *See generally* W. Prosser, Handbook of the Law of Torts § 117 (4th ed. 1971); Restatement (Second) of the Law of Torts §§ 652A, 652B, 652D (1977). Moreover, section 605 of the Communications Act of 1934, as amended, 47 U.S.C. § 605 (1976), may provide a remedy in certain cases for the disclosure of wire or radio communications unlawfully intercepted before chapter 119 took effect.[7] Plaintiffs do not contend that any such alternative theory of recovery could or should apply in the present case, but instead rely on chapter 119 as their exclusive nonconstitutional[8] basis for relief.

---

**4.** Plaintiffs do not dispute that, as a general proposition, ch. 119 was intended to apply prospectively only. *See* note 3 *supra*.

**5.** Although we are not required to go beyond the words of the statute, our decision is supported by the relevant legislative history on this issue. In what the Senate Judiciary Committee called "a comprehensive and in-depth analysis of [ch. 119]," S.Rep. No. 1097, 90th Cong., 2d Sess. 88, *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2177, the committee's discussion of §§ 2511(1)(c) and 2520 is entirely consistent with our ruling. *See id.* at 93, 107, *reprinted in* [1968] U.S.Code Cong. & Admin.News at 2181–82, 2196.

**6.** Plaintiffs argue that

it was the intention of Congress . . . to create a cause of action for the unlawful and unconsented *disclosure* of any warrantless interception of communication, *regardless* if made prior to the effective date of [ch. 119] . . . . . A contrary position would . . . allow to private and public parties carte blanch[e] to disclose these materials, in violation of the legal and privacy rights of the aggrieved individual without fear of civil liability. It is hard to fathom the idea that Congress intended to allow such a harsh result.

Brief for Appellants at 10–11 (emphasis in original).

**7.** Prior to 1968, at least according to some federal courts, the violation of § 605, which precluded the interception and disclosure of certain wire and radio communications, gave rise to civil liability. *See, e. g., Reitmeister v. Reitmeister*, 162 F.2d 691, 694 (2d Cir. 1947). With the enactment of the Omnibus Crime Control and Safe Streets Act of 1968, Congress amended § 605 and made it subject to the provisions in ch. 119. The Senate report accompanying the 1968 Act explained the intended relationship between § 605 and the new ch. 119: "The new provision is intended as a substitute. The regulation of the interception of wire or oral communications in the future is to be governed by proposed new chapter 119 of title 18, United States Code." S.Rep. No. 1097, 90th Cong., 2d Sess. 107, *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2196. Arguably, in substituting the regulatory scheme of ch. 119 for that of § 605, Congress did not intend to foreclose the possibility of civil liability under § 605 for conduct occurring before the provisions of ch. 119 were fully operational.

At no point in the present case, however, have plaintiffs sought to rely on § 605. In any event, because plaintiffs allege that the communications in question were "oral communications" that were "bugged," *see* J.A. at 5 (complaint), it appears that there was no "interception" of a "communication by wire or radio" within the meaning of the pre-1968 version of § 605. *See* Communications Act of 1934, ch. 652, § 605, 48 Stat. 1103 (current version at 47 U.S.C. § 605 (1976)), *construed in Goldman v. United States*, 316 U.S. 129, 133–34, 62 S.Ct. 993, 995–996, 86 L.Ed. 1322 (1942), *overruled in part on other grounds, Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**8.** As we shall discuss, *see* pp. 222–224 *infra*, plaintiffs' constitutional claims for damages in this case are without merit. We hasten to point out, however, that the Constitution may, in appropriate cases, provide a remedy for the disclosure of communications that were unlawfully intercepted before the effective date of ch.

All we decide at this juncture is that plaintiffs' theory under section 2520 does not state a claim upon which relief may be granted.[9]

## III. PLAINTIFFS' CLAIMS UNDER *BIVENS*

■ As an alternative basis for the recovery of damages, plaintiffs assert a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that the federal defendants violated plaintiffs' fourth amendment rights and that the newspaper participated with the federal defendants in a conspiracy to accomplish this fourth amendment violation. The district court dismissed these allegations as not stating claims upon which relief could be granted. We agree with this ruling.

### A. *Claim Against the Federal Defendants*

Judge Gasch dismissed the *Bivens* claim against the federal defendants on the ground that "the count is precisely the same as a count pending in a related case [*Zerilli v. Civiletti*, Civ. No. 77–0546 (D.D.C. filed Mar. 28, 1977)] between the same parties before this Court." *Zerilli v. Detroit News*, Civ. No. 78–0766, at 4 (D.D.C. Jan. 25, 1979)

(memorandum and order) [hereinafter cited as District Court Memorandum], *reprinted in* Joint Appendix (J.A.) at 12, 15. Judge Gasch did not err in dismissing this claim, for a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc). *See also Washington Metropolitan Area Transit Authority v. Ragonese*, 617 F.2d 828 (D.C.Cir. 1980).

### B. *Claim Against the Newspaper*

In dismissing the conspiracy claim against the newspaper, the district court noted that a private person cannot violate the fourth amendment and that the newspaper was not involved in the early 1960's when the federal defendants allegedly violated the fourth amendment by intercepting plaintiffs' communications.[10] *See* District Court Memorandum at 3–4, *reprinted in* J.A. at 14–15. Plaintiffs contend that their *Bivens* claim against the newspaper should not have been dismissed. They argue that *Bivens* liability should be imposed on private parties that assist or encourage governmental officials in the violation of constitutional rights and that the district court, in concluding that there was no con-

119, and this potential constitutional remedy also tends to negate plaintiffs' "carte blanche" contention. Indeed, our decision today does not foreclose the possibility that plaintiffs may have a constitutional remedy against the federal defendants on the very facts presented here. *See* note 12 *infra*. Whether in fact such a remedy exists is a question to be resolved in a related proceeding, *Zerilli v. Civiletti*, No. 79–2466 (D.C.Cir. filed Dec. 10, 1979), *on appeal from Zerilli v. Civiletti*, Civ. No. 77–0546 (D.D.C. Nov. 30, 1979) (memorandum and order granting summary judgment to defendants on plaintiffs' fourth amendment claim). *See* p. 222 *infra*.

**9.** In *Providence Journal Co. v. FBI*, 602 F.2d 1010 (1st Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980), a case arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976) (amended 1978), the court relied on the congressional policy against disclosure embodied in ch. 119 to find that the contents of unlawfully intercepted communications were exempt from disclosure, even ·though the unlawful interceptions oc-

curred before the effective date of ch. 119. The court concluded that Congress's judgment, reflected in ch. 119, was dispositive on the applicability of FOIA Exemption 7(C), which permits an agency to withhold "matters that are . . . investigatory records compiled for law enforcement purposes . . . to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C) (1976). The court did not address the issue we confront today, *see* 602 F.2d at 1012 n.2, and we do not believe its use of ch. 119 as a yardstick under FOIA Exemption 7(C) in any way undercuts the validity of our reasoning.

**10.** The complaint does not allege that the newspaper was in any way connected with the interception of plaintiffs' communications in the early 1960's. Instead, it claims that a conspiracy involving the newspaper existed when the federal defendants allegedly disclosed the communications in 1976.

stitutional violation at the time of the alleged conspiracy, erroneously refused to treat the government's 1976 *disclosure* to the newspaper of plaintiffs' intercepted communications as an independent violation of the fourth amendment.

*Bivens* stands for the proposition that victims of constitutional violations committed by federal officials generally have a right to recover damages from the officials without the need for an authorizing statute. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980). The Supreme Court has never discussed the possibility that *Bivens* liability might extend beyond federal officials and reach private actors who in some way have participated in a governmental violation of constitutional rights. The Court has, however, indicated more generally that *Bivens* liability is inappropriate "[when defendants demonstrate] 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. at 396, 91 S.Ct. at 2005).

Assuming without deciding that private parties may in some circumstances be held liable under *Bivens* for conspiring with federal officials,[11] we believe there are three "special factors" that, taken together, preclude us from imposing such liability in the present case. First, the asserted violation of constitutional policy that would form the predicate for such liability—*i. e.,* the alleged governmental disclosure of information originally obtained in violation of the fourth amendment—is well removed from the central thrust of that amendment. The fourth amendment is addressed only to "searches and seizures," and the basic constitutional wrong has been fully accomplished when the unlawful search or seizure has been completed. *Cf. United States v. Calandra,* 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974) ("derivative use of the product of a past unlawful search and seizure . . . work[s] no new Fourth Amendment wrong"). *See also McSurely v. McClellan,* 553 F.2d 1277 (D.C. Cir. 1976) (en banc) (court equally divided on question of whether federal officials, by transporting and using materials originally obtained through an unconstitutional search and seizure by state officials, had themselves engaged in an independent violation of the fourth amendment), *cert. dismissed,* 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978).[12] Second, even if private parties

---

11. We do not reach the difficult question of whether private persons can ever be held liable under *Bivens* for conspiring to have federal officials violate a plaintiff's constitutional rights, for we decide only that such liability is inappropriate in the present circumstances. As the district court noted, "it is well settled that a private person cannot violate the prohibition on unreasonable searches and seizures found in the Fourth Amendment." District Court Memorandum at 3 (citing *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921)), *reprinted in* J.A. at 14. What remains unresolved, however, is whether private persons can be liable under *Bivens* for conspiring or acting in concert with governmental officials who themselves commit the constitutional infraction. *Compare, e. g., Fletcher v. Rhode Island Hospital Trust Nat'l Bank,* 496 F.2d 927, 932 n.8 (1st Cir.) ("While federal officers may, at times, be subject to suit for unconstitutional behavior, *see* [*Bivens*], there is no cause of action against private parties acting under color of federal law or custom."), *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974), *with, e. g., Writers Guild of America, West, Inc. v. American Broadcasting Co.,* 609 F.2d 355, 360 (9th Cir.

1979) (intimating that, in certain circumstances, it may be appropriate to "fashion[ ] a cause of action for damages against . . . private defendants based on [*Bivens*]"). *See generally McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 75–76 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Holodnak v. Avco Corp.,* 514 F.2d 285, 292 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975); *Greenya v. George Washington Univ.,* 512 F.2d 556, 562 n.13 (D.C.Cir.), *cert. denied,* 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975). *See also Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–1606, 26 L.Ed.2d 142 (1970) (conspiracy with state officials can make private persons liable for damages under 42 U.S.C. § 1983 (1976) (amended 1979)).

12. Whether there could be independent *Bivens* liability for federal officials who themselves disclose information originally obtained in violation of the fourth amendment is an issue we do not reach. We deal only with the question of whether a private newspaper may be held liable for conspiring to receive the information disclosed. *See also* note 8 *supra.*

might be liable under *Bivens* in certain circumstances,[13] we believe that a defendant's private status should at least "counsel hesitation" in the creation of *Bivens* liability, for the primary purpose of the *Bivens* doctrine is to remedy abuses by those who act as agents for the sovereign. *Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. at 392, 91 S.Ct. at 2022 ("An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own."). Third, finding the newspaper liable in the present case would amount to holding a newspaper liable in damages for uncovering and publishing information that it deems newsworthy. The values served by a free and vigilant press militate against such a result. *Cf. Martin v. Merola*, 532 F.2d 191, 199 (2d Cir. 1976) (separate statement of Gurfein, J.) (first amendment may be implicated in holding newspaper liable under 42 U.S.C. § 1983 (1976) (amended 1979) based upon its publications). Based upon these considerations, we decline plaintiffs' invitation to extend *Bivens* to reach their claim against the newspaper.

## IV. CONCLUSION

Neither 18 U.S.C. § 2520 nor the fourth amendment affords civil relief to the plaintiffs in this case. The district court's dismissal of their complaint is therefore

*Affirmed.*