Craig M. STEVENS, Linda H. Stevens,
Danny M. Brown, and Gregory A.
Perkins, Plaintiffs,

v.

MORRISON–KNUDSEN SAUDI ARABIA
CONSORTIUM, Morrison-Knudsen of
Arabia, Inc., Morrison-Knudsen Company, Inc., Fischbach and Moore International Corp., and Interbeton Construction N.V., Curacao, Defendants.

Civ. No. H–82–74.

United States District Court,
D. Maryland.

Dec. 15, 1983.

Eileen M. Stein, Douglas B. Huron, and Stein & Huron, Chevy Chase, Md., for plaintiffs.

George D. Ruttinger, Eldon H. Crowell, Clifton S. Elgarten, and Crowell & Moring, Washington, D.C., for defendants.

ALEXANDER HARVEY, II, District Judge.

In this civil action, three construction workers[1] are attempting to hold their private employers legally responsible for alleged violations of their federal constitutional rights occurring in Saudi Arabia. Plaintiffs were prosecuted and punished under the law of Saudi Arabia by Saudi authorities when they were found in possession of marijuana while employed in that kingdom by the American firms named here as defendants.

The narrow question presented at this stage of the case is whether a private company operating under a contract with the federal government may be sued for alleged violations by it of the constitutional rights of its employees occurring in a foreign country. The three plaintiffs were working in Saudi Arabia as employees of defendant Morrison-Knudsen Saudi Arabia Consortium (hereinafter "MKSAC"), which is comprised of defendants Morrison-Knudsen of Arabia, Inc., Fischbach and Moore International Corp., and Interbeton Construction N.V., Curacao. Also named as a defendant is Morrison-Knudsen Company, Inc. (hereinafter "M–K Co."), the parent of Morrison-Knudsen of Arabia, Inc. which is the controlling partner of MKSAC.[2]

---

1. The wife of one of these construction workers has joined her husband as a plaintiff in this suit. References to "plaintiffs" herein are intended to mean the male plaintiffs.

2. The complaint also named as defendants J.K. Lemley (an employee of MKSAC) and Milton L. Little (a Colonel in the United States Army Corps of Engineers). Orders have been entered dismissing these two individuals as defendants

This suit arises out of a series of events which took place in Saudi Arabia in 1980–81, culminating in plaintiffs' prosecution by Saudi authorities and subsequent imprisonment in a jail in that kingdom for possession of marijuana. Suing here directly under the United States Constitution, plaintiffs have charged MKSAC, their employer, with violations of various constitutional rights guaranteed to them under the Fourth, Fifth and Sixth Amendments. In addition, they seek recoveries from defendants under various theories of state law.[3] Compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $2,500,000 are sought in Count One which alleges plaintiffs' federal claim. Jurisdiction has been asserted under 28 U.S.C. § 1331 and also under 28 U.S.C. § 1332.

Presently before the Court are various motions for summary judgment. Defendant MKSAC seeks summary judgment on the grounds that as a private entity it cannot be held liable for constitutional torts, that diversity jurisdiction does not exist, and that plaintiffs' pendent state claims should likewise be dismissed. Defendant M–K Co. has filed a separate motion for summary judgment, relying on the same grounds as has defendant MKSAC and also contending that as the parent of a partner of MKSAC, it cannot be held responsible for the acts of that entity. Plaintiffs themselves have filed a cross motion for partial summary judgment, asking this Court to find that MKSAC was sufficiently involved with the federal government to become a so-called "state actor." Extensive briefs have been filed in support of and in opposition to these motions, and oral argument has been heard in open court. For the reasons to be herein stated, this Court will grant summary judgment in favor of all defendants and will deny plaintiffs' motion for partial summary judgment.

## I

### Background Facts

As disclosed by the extensive discovery undertaken to date, the essential facts are not in dispute. At the time that the events in question occurred, MKSAC was under contract with the United States Army Corps of Engineers (hereinafter "the Corps") to construct a significant portion of the King Khalid Military City (hereinafter "KKMC") for the Saudi Arabian government. The KKMC was being built for the Saudi Arabian Ministry of Defense and Aviation pursuant to an agreement between the United States and Saudi Arabia known as the Engineer Assistance Agreement of 1965 (hereinafter "The EAA"). Under this Agreement, the United States undertook to provide engineering and construction management services for the building of military facilities for the Saudi government. The Corps was designated to carry out the responsibilities of the United States under this Agreement. Various contracts were awarded by the Corps for the performance of this work, including one to MKSAC. The construction work in question was performed at the KKMC site located in the desert in northeastern Saudi Arabia. Plaintiffs and other employees lived at the site in prefabricated housing constructed by MKSAC.

In February 1980, security forces of MKSAC, acting on a tip that plaintiffs were using illegal drugs, searched their rooms. Although some dispute exists concerning whether plaintiffs freely consented to the search, it appears that plaintiffs did permit MKSAC representatives to search the rooms. Marijuana was found in each man's room. The plaintiffs were interrogated by representatives of MKSAC, and statements were obtained from two plaintiffs admitting to the use and possession of marijuana. MKSAC immediately terminated plaintiffs' employment, and they prepared to return to the United States. Pursuant to their contracts of employment plain-

because of lack of personal jurisdiction or failure of service.

3. Ten of the eleven counts of the complaint are based on state law.

tiffs could be terminated for using narcotics.

Approximately one week after the searches were conducted, plaintiffs were informed that the Saudi government had become involved and that plaintiffs would be required to surrender their passports and remain at KKMC. Thereafter, MKSAC furnished the Saudi authorities with the evidence it had gathered including the marijuana itself and the statements of the plaintiffs.

Ten days later, plaintiffs were arrested by Saudi authorities, were charged with narcotics violations and were incarcerated. In early June 1980, plaintiffs were tried, convicted and sentenced by a Saudi court in Dammam. The original sentence was flogging and deportation. Upon review by the Saudi Royal Family, the sentences were increased, and a two year term of imprisonment was added. However, plaintiffs remained in prison only until January, 1981 when they were released and returned to the United States.

This suit was filed on January 12, 1982. Federal jurisdiction is asserted directly under the Constitution and is based on plaintiffs' claims that MKSAC as a "state actor" violated their constitutional rights by, *inter alia,* searching their rooms without a warrant, eliciting involuntary confessions, confining them to house arrest at KKMC, and confiscating their passports. Various other claims are asserted by plaintiffs under state tort and contract law.[4]

## II

### *Plaintiffs' Federal Claim*

Count One of the complaint alleges that actions of MKSAC taken under color of law deprived plaintiffs of various rights guaranteed by the United States Constitution. Specifically, plaintiffs assert (1) that the unauthorized search of their living quarters at KKMC by representatives of MKSAC in February, 1980 violated the Fourth Amendment; (2) that their coercive interrogation by MKSAC security personnel violated the Fifth and Sixth Amendments; (3) that the unauthorized seizure of their passports violated the Fourth and Fifth Amendments; (4) that their confinement to the job site at KKMC for approximately 10 days violated the Fifth Amendment; and (5) that their Fifth Amendment rights were also violated when they were turned over to Saudi authorities in February 1980.

By their cross-motion for partial summary judgment, plaintiffs ask this Court to find that the acts of representatives of MKSAC which they have challenged here constituted so-called "state action" so as to permit a federal claim to be asserted by plaintiffs against the private companies named as defendants here. Defendants' motions for summary judgment likewise address the question whether a federal claim may be asserted by these plaintiffs against the private firms which employed them.

This case is particularly well suited for disposition by way of motions for summary judgment. Pursuant to Rule 56(c), F.R. Civ.P., a motion for summary judgment should be granted "forthwith" if the pleadings, discovery and affidavits filed in a case show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The pending motions for summary judgment present essentially legal issues. Although plaintiffs have argued that there are disputed facts in the record which preclude the entry of summary judgment, this Court is satisfied that the facts material to a decision here are not in dispute.

The federal claim asserted by plaintiffs in Count One is based on the Supreme Court decision in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiffs ask this Court to fashion a *Bivens*-type remedy which would permit a federal claim to be asserted by them directly under the Constitution against the defendants for acts of

---

**4.** Defendants' motions to dismiss the complaint based on the act of state doctrine, *forum non* *conveniens* and lack of jurisdiction have previously been denied by this Court.

theirs undertaken in a foreign country. From its review of the applicable law, this Court concludes that no such federal cause of action exists which would permit the plaintiffs to recover damages from the private companies named as defendants for claimed violations of their constitutional rights occurring in Saudi Arabia.

■ It is well settled that most rights secured by the Constitution are protected against infringement only by governments or their agents. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). In *Bivens,* the Supreme Court, noting the absence of any Congressional legislation supporting such a claim, authorized for the first time a suit for damages against federal officials whose actions violated an individual's Fourth Amendment rights. *See Chappell v. Wallace,* — U.S. —, —, 103 S.Ct. 2362, 2364, 76 L.Ed.2d 586 (1983). In the years since *Bivens,* the existence of a similar remedy has been recognized by the Supreme Court in actions brought against federal officials for a violation of Fifth Amendment rights, *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and for a violation of Eighth Amendment rights, *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

■ A review of *Bivens* and its progeny indicates that a federal cause of action asserted thereunder is not nearly as broad as one brought against a state official under 42 U.S.C. § 1983. *Bivens* was judge-made law, and the Supreme Court in *Bivens* and in a number of later cases applying its principles, has expressly and repeatedly cautioned that such a remedy will not be available when "special factors counseling hesitation" are present. *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2005; *Passman,* 442 U.S. at 245, 99 S.Ct. at 2277; *Green,* 446 U.S. at 18, 100 S.Ct. at 1471;

*Chappell,* — U.S. at —, 103 S.Ct. at 2364. Federal claims asserted under § 1983 are the result of Congress-made law, and § 1983 by its own terms indicates that such a claim is broader than the one recognized in *Bivens.* Section 1983 permits a suit to be brought in federal court for an unconstitutional deprivation against "[e]very person" acting under color of state law. *Bivens* and its progeny involved suits only against a federal official. Moreover, under § 1983 a private party who wilfully engages in joint activity with a state official may be found to be acting under color of state law and thereby liable for resulting deprivations of constitutional rights. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Numerous decisions of the Supreme Court have accordingly recognized that acts of a private party may amount to state action which would permit a recovery from such private party under § 1983. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The Supreme Court has, however, never held that a *Bivens*-type claim may be brought against a private party.[5] In recent decisions, the Supreme Court has repeatedly cautioned that before a *Bivens* remedy may be fashioned, the court must take into account any special factors counseling hesitation. *Bush v. Lucas,* — U.S. —, —, 103 S.Ct. 2404, 2410, 76 L.Ed.2d 648 (1983); *Chappell v. Wallace, supra* — U.S. at —, 103 S.Ct. at 2364; *Carlson v. Green, supra* 446 U.S. at 18, 100 S.Ct. at 1471. In *Fletcher v. Rhode Island Hospital Trust National Bank,* 496 F.2d 927, 932 n. 8 (1st Cir.) *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974), the First Circuit flatly stated that there is no federal cause

---

**5.** In a case asserting a claim under *Bivens,* it is federal rather than state action which must be found before the action can be maintained. However, the doctrine encompassing both concepts is commonly known as "state action" and

that term will be used in this Opinion to mean federal governmental action. · *See Dobyns v. E-Systems, Inc.,* 667 F.2d 1219, 1220 n. 1 (5th Cir.1982).

of action under *Bivens* against a private party under color of federal law or custom. In *Bowersox v. Georgia-Pacific Corporation*, Civil No. HM–74–1278 (D.Md., Memorandum and Order dated January 20, 1976), Judge Murray of this Court held that *Bivens* is not applicable where the alleged constitutional violation was that of a private party and where Congress had spoken on the issue. In *Baldassare v. Delta Airlines, Inc.*, Civil No. 79–1997–T (D.Mass., Opinion dated September 29, 1982), District Judge Tauro refused to permit a *Bivens*-type action to be brought against Delta Airlines by one of its employees who sought recovery for an alleged violation of his Fifth Amendment rights.

 It is not necessary in this case to hold that a *Bivens*-type claim may never be asserted against a private party. If there were ever a case where special factors exist which counsel hesitation, this is it. First, as noted, MKSAC is a private party. Whether or not the remedy is available against a private party, this is assuredly a factor to be considered by a court in determining whether to extend the *Bivens* doctrine and impose liability. *See Zerilli v. Evening News Association*, 628 F.2d 217, 223 (D.C.Cir.1980). Secondly, the acts complained of occurred in a foreign country. The damages sustained by the plaintiffs arose essentially as a result of the criminal prosecution of the plaintiffs by Saudi Arabia authorities and the imposition of criminal penalties for admitted violations of the narcotics laws of that country. Indeed, plaintiffs have conceded in this suit that they are not here challenging the validity of acts of the government of Saudi Arabia. MKSAC's cooperation with Saudi officials resulted from the latter's insistence. After MKSAC had decided to terminate plaintiffs' employment and return them to the United States, Saudi authorities demanded that plaintiffs' passports be surrendered and that plaintiffs not be repatriated until the investigation of their criminal conduct had been completed by the government of Saudi Arabia. MKSAC's representative Lemley was even threatened with criminal prosecution himself if he persisted in attempting to remove plaintiffs from the country. Thirdly, even if this Court were to find that acts of representatives of MKSAC amounted to state action (and for reasons stated more fully hereinafter, this Court has concluded in any event that there was no state action present here), the acts in question were hardly those which should be viewed as subjecting the actors to liability for damages. The primary purpose of the *Bivens* doctrine was to remedy abuses by agents of the federal government. *Bivens, supra* 403 U.S. at 392, 91 S.Ct. at 2002. As the Supreme Court indicated, an agent acting in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own. *Id.* at 392, 91 S.Ct. at 2002; *Zerilli v. Evening News Association, supra* at 224. It is difficult to imagine what MKSAC representatives should have done to avoid personal liability under *Bivens*. Plaintiffs complain of a violation of their Fourth Amendment rights. But the MKSAC security personnel in Saudi Arabia were hardly in a position to secure a search warrant from a United States Magistrate before entering plaintiffs' rooms. It is further asserted that plaintiffs' confessions were coerced. The implication is that MKSAC security personnel should have given plaintiffs *Miranda* warnings before taking statements from them.

These circumstances lead this Court to conclude that there were special factors present here which would counsel this Court to hesitate in extending the *Bivens* doctrine to claims of the sort which have been asserted against the defendants in this case. In view of these special factors, no *Bivens* remedy will be fashioned by this Court in this case to permit plaintiffs to recover damages from the defendants under the federal claim they have asserted in Count One of the complaint.

 In any event, even if this Court were to conclude that a *Bivens*-type remedy were available to the plaintiffs, the facts of this case indicate that the challenged

actions of the defendants were not undertaken under color of federal law. To establish that so-called "state action" existed, a complaining party must show that there was a sufficiently close nexus between the state and the challenged action so that the action of the private party may be treated as that of the state itself. *Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 351, 95 S.Ct. at 453. Pursuant to this requirement, "constitutional standards are invoked only when it can be said that the state is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (Emphasis in original).

In three separate decisions handed down in June of 1982, the Supreme Court reviewed in some detail the distinction between private action and state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Blum v. Yaretsky, supra; Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In this trilogy, the Supreme Court undertook a careful review and explication of the concept of state action as applied in various factual settings.

*Lugar* involved the contention that a private party had acted jointly with state officers in depriving a debtor of his property without due process of law. In affirming in part and reversing in part the lower court's ruling, the Supreme Court cautioned that careful adherence to the "state action" requirement would preserve an area of individual freedom by limiting the reach of federal law and federal judicial power. 102 S.Ct. at 2754. Restraint in the application of the state action doctrine is essential in order to avoid "imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id.* 102 S.Ct. at 2754.

In *Blum,* the Court ruled that the decision of a private nursing home to discharge or transfer Medicaid patients to lower levels of care did not amount to state action. The Court emphasized that faithful adherence to the "state action" requirement of

the Fourteenth Amendment demanded careful attention to the gravamen of the plaintiff's complaint. 102 S.Ct. at 2785.

In *Rendell-Baker,* the Court concluded that a teacher at a private school which was supported almost wholly by public funds, was not entitled to sue her employer under § 1983 for alleged violations of her constitutional rights. In that case, the Court analyzed the state action issue under the four traditional factors considered in previous cases.

When those four factors are considered under the circumstances of this case, this Court finds and concludes that the acts of defendants challenged here did not amount to state action. First, private companies are involved here, and any public funds received by them were earned pursuant to their contract with the Corps. The mere fact that MKSAC had entered into a contract with the Corps to perform construction work in Saudi Arabia is of little significance. As the Supreme Court said in *Rendell-Baker, supra* 102 S.Ct. at 2771, acts of a private contractor "do not become acts of the government by reason of their significant or even total engagement in performing public contracts."

Secondly, although it appears that the Corps regulated and supervised MKSAC's performance of the contract, this fact is likewise of little significance when considered in terms of the particular acts challenged as unconstitutional. The investigation of plaintiffs' use of narcotics was not directed or regulated by the Corps, but was undertaken by MKSAC on its own to determine whether plaintiffs were in violation of their employment contract. The Corps had nothing to do with MKSAC's decision to terminate plaintiffs' employment, nor was the Corps responsible for turning the evidence in question over to Saudi authorities. The general supervisory role of the Corps in connection with this construction contract is not sufficient to transform defendants' private acts into those undertaken under color of federal law. *Rendell-Baker, supra* 102 S.Ct. at 2772. As in *Blum,* the decisions about

which plaintiffs complain were made by concededly private parties. *See* 102 S.Ct. at 2786. Responsibility for a private decision can be attributed to the government only when the latter has exercised coercive power or has provided such significant encouragement that the action of the private party must in law be deemed to be that of the government itself. *Id.* 102 S.Ct. at 2786. Evidence of that sort is not present here.

■ The third factor to be considered is whether MKSAC was performing a "public function." In analyzing this issue, the question is whether the function has been "traditionally the exclusive prerogative of the state." *Jackson v. Metropolitan Edison Co., supra* 419 U.S. at 353, 95 S.Ct. at 455. It is clear that state action cannot be found merely because the private entity performs a function which serves the public. *Rendell-Baker, supra* 102 S.Ct. at 2772. In this case, MKSAC may indeed have been acting in a manner which furthered the foreign policy objectives of the United States when it constructed KKMC for the Saudi Arabian government. However, the mere construction of a military facility for a foreign country under a contract with the federal government is hardly the performance of a function traditionally reserved as the exclusive prerogative of the United States. If this were the case, virtually every private company which performed a contract with the federal government for the construction of a military facility would become a state actor under an extension of the *Bivens* doctrine.

The final factor to be considered is whether a "symbiotic relationship" existed here between the government and the private entity. In *Rendell-Baker, supra,* the Supreme Court noted that the private school's fiscal relationship with the state was "not different from that of many contractors performing services for the government." 102 S.Ct. at 2772. As in *Rendell-Baker,* the relationship between MKSAC and the Corps in this case would not amount to the type of symbiotic relationship necessary for a finding of the existence of state action. As noted, the relationship in question was essentially the same as that of any construction company performing a government contract. No symbiotic relationship therefore existed.

Thus, when the four factors mentioned in *Rendell-Baker* are considered here, this Court finds and concludes that no state action existed. Accordingly, even were the Court to find that the *Bivens* doctrine should be extended to permit a federal claim of this sort to be asserted against the defendants, plaintiffs would still not be entitled to a recovery under the facts of this particular case because the acts of representatives of the defendants in question did not, as a matter of law, amount to state action.

Plaintiffs rely heavily on the case of *Dobyns v. E-Systems, Inc.,* 667 F.2d 1219 (5th Cir.1982).[6] In that case, the Fifth Circuit found that state action existed under the applicable facts and permitted plaintiffs to assert a *Bivens*-type claim against E-Systems, Inc., their private employer.

*Dobyns* was decided in February 1982, before the Supreme Court decisions in *Lugar, Blum* and *Rendell-Baker.* Whether or not *Dobyns* satisfies the present Supreme Court requirements for a finding of state action, the facts of *Dobyns* presented, as the Court itself noted, "an almost unique factual situation." 667 F.2d at 1222. Previous cases considering the existence or non-existence of state action were thus found by the Court in *Dobyns* to present "rather remote analogies." *Id.*

E-Systems, Inc., the defendant in *Dobyns,* was an American company working under a government contract in the Sinai Peninsula. The United States had agreed to act as a neutral party to monitor compli-

---

6. *Holodnak v. Avco Corp.,* 514 F.2d 285 (2d Cir.1975), *cert. denied* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), which has also been cited by plaintiffs, involved facts quite different from those present in this case. Moreover, the *Holod-* *nak* case was decided some seven years before the Supreme Court's recent re-examination of the principles which should control a determination of the existence of state action in a particular case.

ance with an agreement between Israel and Egypt concerning troop withdrawal in the Sinai. Concerned about American military involvement, Congress had required that only civilians could be used to fulfill this peace-keeping function. Accordingly, the United States government created the Sinai Support Mission to carry out the duties and responsibilities of the government. The Director of the Mission was a government employee appointed by the President and authorized to enter into any contract necessary to carry out its duties. The Mission had entered into a contract with plaintiff's employer, defendant E-Systems, whereby the latter was responsible for the installation, operation, maintenance and support of the early warning surveillance system and was required to report all information received to Israel and Egypt. In holding that defendant E-Systems was performing a public function, the Fifth Circuit found that the role of the defendant was that of a peacekeeper (a job traditionally reserved to the sovereign); that the defendant conducted military surveillance (clearly a sovereign function); that the defendant established its own contacts with the embassies of two foreign countries and that the defendant had taken over the police function of the government, including the specific searches challenged in the suit which had been ordered by the Director of the Mission.

No such unique facts are present in this case. Here there is little more than a private company acting under a government contract in a foreign country and subject to the general supervision of the Corps of Engineers. In *Dobyns*, the Fifth Circuit was careful to point out that the mere existence of a contract between the federal government and a private company is insufficient to create state action. 667 F.2d at 1227.

For all these reasons, the motion for summary judgment of defendant MKSAC will be granted. Similarly, the motion for summary judgment of defendant M–K Co. will likewise be granted. Finally, the mo-

tion of plaintiffs for partial summary judgment will be denied.

■ In granting the motion for summary judgment of defendant M–K Co., the Court has assumed that the acts of representatives of defendant MKSAC were the acts of defendant M–K Co. as well. Defendant M–K Co. is, however, entitled to summary judgment for another reason. M–K Co. was a separate entity from MKSAC, which is a joint venture formed by several corporations including Morrison-Knudsen of Arabia, Inc., which is a subsidiary of M–K Co. On the record here, this Court finds and concludes as a matter of law that defendant M–K Co. was not responsible for any acts of MKSAC. There is no fraud or paramount equity which would permit this Court to pierce the corporate veil and hold M–K Co. responsible for any acts of employees of MKSAC. *See Cawley v. Bloch*, 544 F.Supp. 133, 137 (D.Md.1982).

### III

#### *Plaintiffs' Claims Under State Law*

Plaintiffs' claims under state law alleged in Counts Two through Eleven of the complaint are based on the assertion first that diversity jurisdiction exists in this case and secondly that in any event this Court should exercise pendent jurisdiction over these state claims. On the record here, this Court concludes that the state claims likewise should be dismissed.

■ First, it is apparent that complete diversity does not exist in this case. Plaintiff Perkins is a resident and citizen of Idaho. As established by an affidavit filed herein, M–K Co. has its principal place of business in Boise, Idaho.[7] It is well established that a federal court may not exercise diversity jurisdiction if any one of the plaintiffs and one of the defendants are citizens of the same state. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373–374, 98 S.Ct. 2396, 2402–2403, 57 L.Ed.2d 274 (1978). Thus, complete diversity as required by *Strawbridge v. Curtiss*, 3

---

**7.** In its "Statement of Undisputed Facts," plaintiffs concede that M–K Co. (and also its subsidiary Morrison-Knudsen of Arabia, Inc.) is headquartered in Boise, Idaho.

Cranch 267, 2 L.Ed. 435 (1806) does not exist in this case.

■ Pendent jurisdiction is a doctrine of discretion and not one of plaintiff's right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, the Supreme Court has expressly cautioned that "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139.

■ Here, the federal claim has been dismissed pursuant to defendants' motions for summary judgment. Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir.1974) said the following:

> If it appears that the federal claims ... could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

Since summary judgment has been granted as to plaintiffs' federal claim and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction in this case. If plaintiffs wish to assert claims against defendants under state law, they should file an appropriate suit in a state court.

For these reasons, defendants' motions for summary judgment will likewise be granted as to Counts Two through Eleven inclusive.

## IV

### Conclusion

Accordingly, plaintiffs' motion for summary judgment will be denied, and defendants' motions for summary judgment will be granted as to all counts. Judgment will therefore be entered in favor of the defendants, with costs. An appropriate Order will be entered by the Court.