[No. E002339. Fourth Dist., Div. Two. Nov. 6, 1986.]

JANET LYNN STALNAKER et al., Plaintiffs and Appellants, v. BOEING COMPANY et al., Defendants and Respondents.

**COUNSEL**

David M. Harney, Harney, Wolfe, Pagliuso, Shaller & Carr, Horvitz & Levy, Horvitz, Levy & Amerian, Barry R. Levy, Frederic D. Cohen and Michael A. Nava for Plaintiffs and Appellants.

O'Melveny & Myers, Scott H. Dunham and Cliff Fonstein for Defendants and Respondents.

**OPINION**

**CAMPBELL, P. J.**—In this appeal, following defendants' successful motion for summary judgment, plaintiffs present two issues. First, they contend

that similar to *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R. 4th 758] and its progeny, the trial court erred in ruling that Labor Code sections 3600 and 3601 precluded judicial relief. Second, they contend that the court erred in ruling that they could not maintain a constitutional tort action modeled on *Bivens* v. *Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [29 L.Ed.2d 619, 91 S.Ct. 1999]. We reject both contentions and affirm.

FACTS

Plaintiffs Janet Lynn, Amy and Andrew Stalnaker are, respectively, the widow and minor children of Stephen Stalnaker (Stalnaker). Stalnaker was hired in September 1981 by defendant Boeing Services International, Inc. (BSI) as a range inspector "A." As listed in his job description, Stalnaker's duties, among others, included locating and identifying unexploded ordnance on firing ranges.

BSI is a signatory to a contract with the United States Army under which BSI is responsible for the general operation and maintenance of the Army's military installation at Fort Irwin, California. BSI's responsibilities include the maintenance and clearance of Fort Irwin's firing ranges. BSI is a wholly owned subsidiary of defendant the Boeing Company (Boeing).

On October 6, 1982, Stalnaker and four other range inspectors employed by BSI were assigned to help clear unexploded ordnance and other debris from former hand grenade range 29. The BSI employees were supervised by an Army explosive ordnance disposal officer, Lieutenant David White, who directed them to walk five abreast looking for debris and unexploded ordnance. The team made two passes through the range and located both nonexplosive ordnance fragments and two explosive artillery booster charges, the latter of which Lieutenant White identified and collected.

An explosion interrupted the team's third pass through the range. One of the BSI employees had stepped on an unexploded hand grenade lying beneath the surface of the range. The explosion injured all of the BSI employees and Stalnaker died from his wounds.

Plaintiffs survived Stalnaker's death. On December 20, 1982, the Workers' Compensation Appeals Board approved an agreement between Mrs. Stalnaker and BSI's insurance carrier settling in full all workers' compensation benefits BSI owed to plaintiffs as a result of Stalnaker's death. Under the agreement, BSI agreed to pay $75,000 in death benefits and $1,500 in burial benefits. The parties exempted from the settlement any claim based on BSI's "serious and willful" misconduct impliedly arising under Labor

Code section 4553.[1] Plaintiffs later filed an additional workers' compensation claim under this section.[2]

On July 7, 1983, plaintiffs filed a complaint for personal injuries against BSI, Boeing, the State of California, and 100 Doe defendants. The complaint alleged wrongful death, negligence, ultrahazardous substance and activity, and fraud for which both compensatory and punitive damages were sought. The complaint's factual allegations were to the effect that BSI knew that unexploded ordnance lay beneath the range's surface, and that despite that knowledge and its awareness of the potential for death or injury, it sent Stalnaker onto the range, without any special training or protective clothing or apparatus that would prevent death or injury. The complaint also alleged that Stalnaker was not warned of the potential hazards of the range, and that BSI withheld this warning because it feared that if informed of the risk, no employee would have performed the work.

In February 1985, BSI and Boeing moved for summary judgment. BSI argued that plaintiffs' sole and exclusive remedy was workers' compensation; Boeing argued that it was not liable for the torts of BSI, a separately capitalized subsidiary corporation. In their opposition, plaintiffs argued BSI's intentional misconduct in sending Stalnaker onto a range that it suspected contained unexploded ordnance rose to the level of an assault for which plaintiffs could maintain a tort action. Further, plaintiffs represented that they would seek leave of court to amend their complaint to allege a cause of action for violation of Stalnaker's constitutional rights, and that this ground also prevented summary judgment.

BSI's and Boeing's motions were granted and on May 7, 1985, a judgment of dismissal was entered. This appeal followed.

---

[1] All subsequent nondescript statutory references are to the Labor Code.

Section 4553 at the date of Stalnaker's death read as follows: "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following:

"(a) The employer, or his managing representative.

"(b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof.

"(c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof.

"But such increase of award shall in no event exceed ten thousand dollars ($10,000); together with costs and expenses incident to procurement of such award, not to exceed two hundred fifty dollars ($250)."

The statute was amended in 1982 to delete the $10,000 limitation but otherwise preserved the statutory language. (See Stats. 1982, ch. 922, § 10, p. 3369.)

[2] This claim was pending at the time of Boeing and BSI's motion for summary judgment. (See *infra.*)

## DISCUSSION

### I. *Standard of Review*

At the outset, we note the procedural posture of this case. This is an appeal from a successful motion for summary judgment. BSI and Boeing, as moving parties, introduced declarations in support of their motion, while plaintiffs relied solely on their pleadings, defendants' declarations and argument derived therefrom.

The rules governing summary judgment are well established. ■ Because summary judgment is a drastic remedy which eliminates the right to a trial on the merits, it must be granted with caution and only after the trial court determines "that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 499, 398 P.2d 785].) ■ Further, "'[T]he party moving for summary judgment has the burden of showing by declarations or affidavits setting forth facts admissible as evidence in a trial that the claims or defenses of the adverse party are entirely without merit on any legal theory . . . .' [Citation.] Although the affidavits must be directed to the issues raised by the pleadings, 'a motion for summary judgment is not a substitute for a demurrer and . . . if the affidavits contain factual averments within the general area of the issues framed by the pleadings, they are sufficient to make out a prima facie case' [citation]." (*Mason* v. *Superior Court* (1985) 163 Cal.App.3d 989, 996 [210 Cal.Rptr. 63].)

■ However, where "the defendants' declarations in support of a motion for summary judgment establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case, and the plaintiff's declaration in reply does not show that a triable issue of fact with respect to that defense or that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted." (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].)

The gravamen of BSI and Boeing's motion and supporting declarations was that inasmuch as Stalnaker's injuries arose out of and in the course of his employment, the provisions under workers' compensation law provided his sole and exclusive remedy.[3] (See §§ 3600, 3601.)

---

[3]Plaintiffs on appeal advance no contentions against Boeing. Accordingly, that portion of their appeal is deemed abandoned or waived. (*Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)

In light of these principles, the issue before this court is whether the causes of action which plaintiffs have stated or can state are supported by the facts as stated in defendants' declarations. Plaintiffs contend that two such independent theories exist. We disagree.

## II. *"Exceptional Circumstances"*

██ Plaintiffs contend that notwithstanding the exclusive remedy provisions of sections 3601 and 4553 for work-related injuries and deaths, the "uncontroverted allegations" of their complaint give rise to a cause of action independent of a workers' compensation claim.[4] ██ Plaintiffs argue that the "exceptional circumstances" of intentional misconduct alleged in this case constitute an exception from the exclusivity rule such as that recognized by the California Supreme Court in *Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465. Plaintiffs urge this court to recognize a new exception to the rule of exclusivity, and to apply it to this case. Because we find the contended "exceptional circumstance" unsanctioned in law and contrary to public policy, we refuse to create it. Below we explain the contended exception and our reasons for its rejection.

Plaintiffs' prime reliance is on language contained in *Johns-Manville.* In that case the court was confronted with a situation in which a plaintiff-employee had worked for Johns-Manville for 29 years and was continuously exposed to asbestos in his work. Plaintiff developed pneumoconiosis and lung cancer, and subsequently died from these ailments. The plaintiff filed a complaint for fraud and conspiracy, alleging that "[t]he defendant corporation has known since 1924 that long exposure to asbestos or the ingestion of that substance is dangerous to health, yet it concealed this knowledge from plaintiff, and advised him that it was safe to work in close proximity to asbestos." The plaintiff also alleged Johns-Manville had willfully failed to inform state health officials and its own doctors of the origins and nature of his asbestos-related diseases. The complaint sought compensatory and punitive damages. (*Id.,* at pp. 469-470.)

The central question in reviewing the propriety of the trial court's denial of the defendant's motion for judgment on the pleadings, the high court considered "whether section 4553 is intended to cover the intentional acts of employers which cause employee injuries." (*Johns-Manville, supra,* 27 Cal.3d at p. 470, fn. omitted.) After reviewing the legislative history of that section, the court concluded that "the provisions of section 4553 were designed to penalize intentional misconduct of an employer, and the injuries

---

[4]Plaintiffs' reliance on their uncontroverted allegations in opposition to summary judgment is inadequate to meet their burden of establishing an issue of material fact. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 595-596 [125 Cal.Rptr. 557, 542 P.2d 981].) Nevertheless, for the purposes of this opinion we will review the contentions of law as though plaintiffs had made an appropriate showing in opposition.

which result from such acts are compensable under that section." (*Id.*, at p. 473.)

Regarding exceptions from section 4553, the court continued "while the case law cannot be described as consistent, it reveals that in some exceptional circumstances the employer is not free from liability at law for his intentional acts even if the resulting injuries to his employees are compensable under workers' compensation." (*Johns-Manville, supra,* 27 Cal.3d at p. 473.) There followed a review of cases providing an action at law to proceed, in which the court deduced the principle that "where the employer is charged with intentional misconduct which goes beyond his failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe, some cases have held that the employer may be subject to common law liability." (*Id.*, at p. 475.)

However, before considering the limited class of cases permitting an independent action, the court first examined cases in which the intentional acts of the employer have been held not to justify an action. "*Compensation was determined to be the exclusive remedy for injuries suffered in a case in which the employer concealed the dangers inherent in the material the employees were required to handle* [citation] or made false representations in that regard [citation]. The same conclusion was reached on the basis of allegations that the employer was guilty of malicious misconduct in allowing an employee to use a machine without proper instruction. [Citation.]" (*Id.*, at pp. 473-474.)

"The reason for the foregoing rule seems obvious. It is not uncommon for an employer to 'put his mind' to the existence of a danger to an employee and nevertheless fail to take corrective action. [Citation.] In many of these cases, the employer does not warn the employee of the risk. Such conduct may be characterized as intentional or even deceitful. Yet if an action at law were allowed as a remedy, many cases cognizable under workers' compensation would also be prosecuted outside that system. *The focus of the inquiry in a case involving work-related injury would often be not whether the injury arose out of and in the course of employment, but the state of knowledge of the employer and the employee regarding the dangerous condition which caused the injury. Such a result would undermine the underlying premise upon which the workers' compensation system is based.* That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer. This balance would be significantly disturbed if we were to hold, as plaintiff urges, that any misconduct of an employer which may be characterized as intentional warrants an action at law for damages. It seems clear that section 4553 is the

sole remedy for additional compensation against an employer whose employee is injured in the first instance as the result of a *deliberate failure to assure that the physical environment of the work place is safe.*" (27 Cal.3d at p. 474, italics added.)

The court held that the *Johns-Manville* plaintiff had stated a cause of action "for *aggravation* of the disease, as distinct from the hazards of the employment which caused him to contract the disease. [¶] [A]s we have seen, [a defendant] which engages in intentional misconduct following a compensable injury may be held liable in an action at law for *aggravation* of the injury. [Citation.]" (27 Cal.3d at p. 477, italics added.) In conclusion, the court particularly emphasized that the exclusivity provision of section 3601 would remain strictly construed in order to "'preserve the spirit of the act and to prevent distortion of its purposes.'" (*Id.,* at p. 478.)

Plaintiffs' attempt to fit their case alongside the *Johns-Manville* holding by arguing, in essence, that BSI was responsible for creating conditions so dangerous that there was a "substantial certainty" of Stalnaker's death or injury. Plaintiffs also argue that their action should proceed because of BSI's alleged "extreme misconduct," giving rise to punitive damages.

This argument disregards the letter and spirit of the *Johns-Manville* case.[5] It is apparent that the harm complained of is not an aggravation of an work-related injury but the injury itself. It is also clear that the willful physical assault line of cases is inapposite to the facts at hand. Despite counsel's argument that "[t]he risk of injury to [Stalnaker] was as immediate and certain as a fist in the face," there have been no facts adduced indicating that BSI intended that Stalnaker be injured.

Moreover, we decline to endorse plaintiffs' contended exception to section 3601 for cases where there exists a "substantial certainty" of harm from an employer's misconduct and where punitive damages are alleged. The "substantial certainty" standard would instantly eviscerate section 4553 inasmuch as an intentional tort is an act committed with either the specific intent to injure (a class now covered by the willful assault exception), or committed with the belief that such injury is substantially certain to occur. (See Rest.2d Torts, § 8A; Prosser & Keeton, Law of Torts (5th ed. 1984) § 8, p. 36, fn. 21 and accompanying text.) A "punitive damage" criterion would serve to limit nothing, inasmuch as such a demand routinely accompanies intentional tort allegations. We therefore reject the proposed excep-

---

[5]Plaintiffs stress a potential conflict in BSI's declarations. Anthony George declared that Stalnaker "*was assigned to help clear unexploded ordnance and other debris*" from range 29. J. R. Randolph declared that "BSI employees were expecting to find only inert metal fragments." Resolving the conflict in plaintiffs' favor, it appears that BSI could foresee but did not know that hazardous material may have lain on the range.

tion as not only unsanctioned in law and insufficiently warranted by this case, but as standardless and unlimited.[6]

Appellate decisions after *Johns-Manville* have consistently applied the limited exceptions from section 3601. *Roberts* v. *Pup 'N' Taco Driveup* (1984) 160 Cal.App.3d 278 [206 Cal.Rptr. 533], is typical. There, the employee plaintiff sued his employer for wrongful death, alleging that his injury occurred as a result of the employer hiring a known illegal alien, who, because he feared deportation, failed promptly to telephone for medical assistance after the plaintiff was shot by a robber. Because of the employer's intentional misconduct in hiring an illegal alien, the plaintiff alleged the injury was not covered by the workers' compensation act. (*Id.*, at pp. 280-281.)

The Court of Appeal disagreed, and upheld a demurrer on the ground that section 3601 provided the plaintiff's exclusive remedy. The court held that the plaintiff must do more than vaguely allege intentional misconduct. "The modern view respecting actionable intentional misconduct by the employer is that it must be alleged and proved that the employer 'acted deliberately with the specific intent to injure' the employee." (*Id.*, at p. 283; see also *United States Borax & Chemical Corp.* v. *Superior Court* (1985) 167 Cal.App.3d 406 [213 Cal.Rptr. 155] [exception for misrepresentation of worksite dangerousness disallowed]; *Royster* v. *Montanez* (1982) 134 Cal.App.3d 362 [184 Cal.Rptr. 560] [exception to *Johns-Manville* dual capacity as landowner and employer disallowed]; *Williams* v. *International Paper Co.* (1982) 129 Cal.App.3d 810, 818-819 [181 Cal.Rptr. 342] [intentional injury exception for maintenance of fire-prone jobsite disallowed].)

The court below did not err in granting summary judgment on this cause of action.

---

[6]Although not directly applicable to the case at bench, we note that the Legislature, in section 3602, has clarified and codified the *Johns-Manville* holding.

Section 3602 reads: "(a) Where the conditions of compensation as set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, . . .

"(b) *An employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer, as if this division did not apply, in the following instances*:

"(1) Where the employee's injury or death is proximately caused by a willful physical assault by the employer.

"(2) *Where the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation. The burden of proof respecting apportionment of damages between the injury and any subsequent aggravation thereof is upon the employer.* . . ." (Italics added.) (Stats. 1982, ch. 922, § 6, p. 3367; see *McDonald* v. *Superior Court* (1986) 180 Cal.App.3d 297, 301-303 [225 Cal.Rptr. 394].)

III. *Absence of a Constitutional Tort*

A. *Introduction*

As a second ground for withstanding summary judgment, plaintiffs contend they can state a cause of action based on *Bivens* v. *Six Unknown Fed. Narcotics Agents, supra,* 403 U.S. 388 [29 L.Ed.2d 619, 91 S.Ct. 1999] that supercedes the restrictions of California workers' compensation law (see discussion, *ante*). As explained below, this contention is without merit in that it depends on a nonexistent "constitutional tort," a Fifth Amendment due process right providing a damages remedy for violation of bodily integrity.

█ Among the several preliminary issues which attend the analysis of plaintiffs' *Bivens* cause of action is plaintiffs' mode of pleading and argument. The asserted *Bivens* claim was not stated in the complaint; rather, plaintiffs interposed the claim for the first time in their opposition to BSI and Boeing's summary judgment motion. Plaintiffs' opposition set forth their *Bivens* theory and argued that under well-recognized liberal amendment standards, they could amend their complaint expressly to include this cause of action inasmuch as it relied on no fact not already alleged. Defendants did not take issue with the pleading of a new cause of action, but in their reply papers instead addressed the issue squarely. Thus, the trial court had a fully briefed argument before it, and ruled thereon.

Under these circumstances, we deem waived defendants' objection to plaintiffs' irregular mode of pleading and argument. Plaintiffs could clearly have moved the court for leave to amend and to defer ruling on the summary judgment motion until the amendment had been granted. (See *McDonald* v. *Superior Court, supra,* 180 Cal.App.3d 297, 303-304; cf. *Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 306 [191 Cal.Rptr. 704].)[7]

Plaintiffs argue that "Federal officials are subject to personal liability if they violate the constitutional rights of citizens while acting under federal law" and cite *Bivens, supra,* 403 U.S. 388. The argument proceeds that

---

[7]Defendants' argument in reliance on *IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 451-452 [147 Cal.Rptr. 828] is misplaced. There the court stated: "[Defendant's] burden on its motion for summary judgment was only to negate the existence of triable issues of fact in a fashion that entitled it to judgment on the issues raised by the pleadings. [Citation.] It was not required to refute liability on some theoretical possibility not included in the pleadings." These words were directed to a situation in which the novel theories of liability had been raised for the first time *on appeal.* Thus, the new theory was irrelevant to the question of whether the lower court had erred in granting the motion. In the case at hand, however, the newly introduced theory was fully presented to the trial court, without defendants' objection. Defendants' citation to *Cochran* v. *Linn* (1984) 159 Cal.App.3d 245 [205 Cal.Rptr. 550], is similar.

"In appropriate circumstances, a private corporation can be characterized as an agent of the federal government against whom a *Bivens* action can be maintained. [Citation.] Where constitutional rights are violated federal law takes precedence over state law. [Citation.] In the instant action BSI was an agent of the federal government by virtue of its contract with the Army. By willfully and recklessly failing to take steps to protect [Stalnaker] from certain and significant injury or death, BSI is liable for the violation of [Stalnaker's] constitutionally protected liberty interest in his physical security and integrity. [Citation.] BSI's liability for this constitutional tort exists apart from any liability it may have as [Stalnaker's] employer."

Below we consider each link in this argument: *Bivens* claims, jurisdiction, private party status as an insulation, state action, and most important, the novel Fifth Amendment damages remedy for violated bodily integrity.

### B. *Bivens-type Constitutional Torts*

In *Bivens* the victim of an arrest and search claimed to have been violative of the Fourth Amendment brought suit for damages against the responsible federal agents. The high court rejected the claim that the plaintiff's remedy lay exclusively in the state court under state law, with the Fourth Amendment signifying only to nullify a defense of federal authorization. Instead, the court held that a violation of the Fourth Amendment command against unreasonable searches and seizures by federal agents gives rise to a cause of action for damages occasioned by the unconstitutional conduct. (*Bivens, supra,* 406 U.S. 388, 397 [29 L.Ed.2d 619, 627, 91 S.Ct. 1999, 2005].)

Federal law at the time provided no statutory remedy for the harm alleged; the defendants were alleged to be direct agents of the federal government; and the analysis giving rise to the new "constitutional tort" (that is, a right deriving independent of federal statutory or state law) was grounded on a right expressly embodied in the Fourth Amendment. (*Id.,* 406 U.S. at pp. 392-397 [29 L.Ed.2d at pp. 624-627, 91 S.Ct. at pp. 2002-2005].)

Since the *Bivens* decision, constitutional tort actions brought in federal court have become commonplace. The United States Supreme Court and lower federal courts now recognize *Bivens*-style actions as remedial of not only Fourth Amendment injuries, but of harms proscribed under First, Fifth and Eighth Amendments. (See, e.g., *Carlson* v. *Green* (1980) 446 U.S. 14 [64 L.Ed.2d 15, 100 S.Ct. 1468] [Eighth Amend.]; *Davis* v. *Passman* (1979) 442 U.S. 228 [60 L.Ed.2d 846, 99 S.Ct. 2264] [Fifth Amend. due process]; *Gibson* v. *United States* (9th Cir. 1986) 781 F.2d 1334 [First Amend.]; *Reuber* v. *United States,* (D.C. Cir. 1984) 750 F.2d 1039 [First Amend.].)

### C. *State Court Jurisdiction*

Defendants object to the exercise by this California state court of jurisdiction over a *Bivens*-type claim. However, this objection is not well

taken. Although it is true that the proposed amendment to the complaint did not include a jurisdictional statement to guide the court, we conclude that California courts may have jurisdiction of a properly pleaded *Bivens* action.

The pertinent rule is that "state courts may assume subject matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." (*Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981) 453 U.S. 473, 477-478 [69 L.Ed.2d 784, 791, 101 S.Ct. 2870].) The Court of Appeal for the Second District implicitly recognized state court jurisdiction of *Bivens* actions but then added, "this is not the problem confronting us." (*Novick* v. *City of Los Angeles* (1983) 148 Cal.App.3d 325, 333 [195 Cal.Rptr. 747].) Faced squarely with the question we see no necessary impediment to exercising jurisdiction.

Defendants' citations to the contrary are inapposite. *Cobos* v. *Mello-Dy Ranch* (1971) 20 Cal.App.3d 947 [98 Cal.Rptr. 131] and *Larez* v. *Oberti* (1972) 23 Cal.App.3d 217 [100 Cal.Rptr. 57], involved actions purportedly brought under the Immigration and Nationality Act by private plaintiffs alleging violations of that act. The Courts of Appeal declined to hear these cases not on jurisdictional grounds but because the act did not provide for a private cause of action to enforce its provisions. (*Cobos,* 20 Cal.App.3d at p. 951; *Larez,* 23 Cal.App.3d at p. 223.) By contrast, *Bivens* itself provides a private remedy by way of money damages for the violation of federal constitutional rights independent of statute.

There has been no congressional reservation of jurisdiction to the federal courts, and in light of the defendants' right of removal (28 U.S.C. § 1442; *Colorado* v. *Symes* (1932) 286 U.S. 510, 517-518 [76 L.Ed. 1253, 1257-1258, 52 S.Ct. 635, 637) we perceive no handicap. (Contra, *Gabaldon* v. *United Farm Workers Organizing Committee* (1973) 35 Cal.App.3d 757, 762-763, fn. 4) [outdated dictum in fn. that *Bivens* is a "federal court remedy" available solely to Fourth Amend. rights].)[8]

### D. *Defendants' Private Party Status and State Action*

██ Defendants next object that because they are private parties, they cannot be defendants in a *Bivens* action. Further, defendants contend that the *Bivens* doctrine cannot apply in this case because no state action has been shown. However, in light of case law expanding the class of *Bivens* defendants and in view of the summary judgment posture of this case, we reject defendants' contention.

---

[8]Other state courts have considered jurisdiction of *Bivens* actions but have denied the relief sought. (See, e.g., *State* v. *Haley* (Alaska 1984) 687 P.2d 305, 318; *Cunha* v. *City of Algona* (Iowa 1983) 334 N.W.2d 591, 594-595.)

Although the United States Supreme Court has been silent on this issue, lower federal courts have held that in proper circumstances a *Bivens* action may proceed against private parties. "Whether [a plaintiff] has a *Bivens* action, in the first instance, depends on whether he has alleged circumstances sufficient to characterize the corporate defendants as federal actors." (*Reuber v. United States, supra,* 750 F.2d 1039, 1056.) This inclusion of private parties follows the rationale that "[a]n agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." (*Bivens, supra,* 403 U.S. at p. 392 [29 L.Ed.2d at p. 624, 91 S.Ct. at p. 2002].)

In applying this principle, the Court of Appeals for the District of Columbia Circuit recognized that "there are situations where because the private action is clearly backed up by the power, property and prestige of the government, its resultant harm approaches closely or even equals that of government officials. [Citation.]" (*Reuber, supra,* 750 F.2d at pp. 1056-1057.) Therefore, in reviewing that part of a summary judgment granted to a government-funded private research facility alleged to have infringed a plaintiff's first amendment rights, the court in *Reuber* held "[t]he fact that defendants are government contractors should not preclude the court from providing a remedy in this case." (*Id.,* at p. 1059; see also *Yiamouyiannis v. Chemical Abstracts Service* (6th Cir. 1975) 521 F.2d 1392, 1393 [First Amend. rights enforceable by *Bivens* action against private party]; *Gardels v. Murphy* (N.D.Ill. 1974) 377 F.Supp. 1389, 1399 [First Amend.; *Bivens* action lies against unpaid White House agent]; contra, *Fletcher v. Rhode Island Hospital Trust National Bank* (1st Cir. 1974) 496 F.2d 927, 932, fn. 8.)

The standard is whether defendants "act[ed] in such a way as to create an integrated alliance . . . and their conduct therefore is imbued with the power and prestige of government officials." (*Reuber, supra,* 750 F.2d at p. 1057.)

The two significant facts adduced by declaration in this case are that BSI operated under a $7 million contract with the United States Army, and that an Army officer oversaw and directed Stalnaker on the day he was killed. Granting plaintiffs every favorable reasonable inference from these facts, it appears they could possibly prove an "integrated alliance" at trial.

Defendants' authorities which suggest the contrary conclusion do not withstand analysis. Their reliance on *Zerilli v. Evening News Ass'n* (D.C. Cir. 1980) 628 F.2d 217 is misplaced in that that case has been superseded within its appellate circuit by *Reuber, supra,* 750 F.2d 1039. "[T]he private status of the defendants, even if deemed a special factor, is not alone sufficient to counsel hesitation in implying a damages remedy when the

private party defendants jointly participate with the government to a sufficient extent to be characterized as federal actors for purposes of a *Bivens* action. Certainly, *Zerilli* does not suggest that the defendants' private status, *standing alone,* should suffice to deny plaintiffs a *Bivens* action." (*Reuber* v. *United States, supra,* 750 F.2d at p. 1058, italics in original.)

Reliance on a trial court opinion, *Stevens* v. *Morrison-Knudsen Saudi Arabia Consortium* (D.Md. 1983) 576 F.Supp. 516, is similarly misplaced. The analysis there considered the several special factors, including the intervention by a foreign government, which counseled hesitation in imposing *Bivens* liability. That key factor is not present in the case at bench. Moreover, the opinion has little applicability to this case inasmuch as the court stated: "It is not necessary in this case to hold that a *Bivens*-type claim may never be asserted against a private party." (*Id.,* at p. 521.)

Defendants' argument that there was no state action in the instant case closely tracks their private party argument. Essentially, they argue that because BSI is a private party there was no state action involved in its conduct. In light of the extremely undeveloped nature of the record at this point, we decline to rule on this question. The two uncontroverted facts adduced—that BSI was a government contractor and its employees were supervised by the Army—are more indicative than not that the actions are "'fairly attributable to the State [i.e., federal government] . . . .'" (*Rendell-Baker* v. *Kohn* (1982) 457 U.S. 830, 838 [73 L.Ed.2d 418, 426, 102 S.Ct. 2764, 2770]; see also *Blum* v. *Yaretsky* (1982) 457 U.S. 991 [73 L.Ed.2d 534, 102 S.Ct. 2777]; *Jackson* v. *Metropolitan Edison Co.* (1974) 419 U.S. 345 [42 L.Ed.2d 477, 95 S.Ct. 449].) We therefore assume without deciding that summary judgment on this ground would not have been warranted.

### E. *Absence of a Constitutional Right*

Plaintiffs argue that there exists a constitutional right (independent of state and federal law) to damages for unjustified intrusions on a person's bodily integrity. Plaintiffs further argue that a *Bivens* action for damages is not limited by the existence of more restrictive state laws.

These contentions were rejected by analogy in the recent decision of *Daniels* v. *Williams* (1986) 474 U.S. 327 [88 L.Ed.2d 662, 106 S.Ct. 662]. In that case the court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." (*Id.,* 474 U.S. at p. 328 [88 L.Ed.2d at p. 666, 106 S.Ct. at p. 663].) In that case a state prisoner sued under 42 United States Code section 1983 to recover damages for injuries sustained when he slipped on a pillow negligently left by state prison agents on a stairway. The petitioner argued that the state's negligence "'deprived' petitioner of his 'liberty' interest in freedom from bodily injury, see *Ingraham*

v. *Wright,* 430 U.S. 651, 673, 51 L.Ed.2d 711, 731, 97 S.Ct. 1401, 1413 (1977); . . ." and that because the state maintained that it was entitled to the defense of sovereign immunity in a state tort suit, he was without an adequate state remedy. Accordingly, petitioner argued the deprivation of his liberty was without due process of law. (*Id.,* 474 U.S. at p. 328 [88 L.Ed.2d at p. 666, 106 S.Ct. at pp. 663-664].)

The high court rejected this argument, reasoning that "mere negligence could not 'wor[k] a deprivation in the *constitutional sense.*'" (*Id.,* 474 U.S. at p. 330 [88 L.Ed.2d at p. 667, 106 S.Ct. at p. 664, quoting *Parratt* v. *Taylor* (1981) 451 U.S. 527, 548 [68 L.Ed.2d 420, 437, 101 S.Ct. 1908, 1919] (conc. opn. of Powell, J.).) To hold otherwise would "'open the federal courts to lawsuits where there has been no affirmative abuse of power.'" (*Id.,* 474 U.S. at p. 330 [88 L.Ed.2d at p. 667, 106 S.Ct. at pp. 664-665].)

We consider this reasoning applicable in the case at bench. *Bivens* actions seek to permit recovery where there has been *no* remedy available for a violation of a particular right. In the case at bench, plaintiffs' constitutional liberty interest was protected by state law, i.e., workers' compensation. Because the high court has held negligence by a state actor does not necessarily work a constitutional deprivation of this right, we can see no reason why the negligence of the United States Government or its agents should be treated differently.

Whether the injury was negligent or more reckless, state law has provided plaintiffs a remedy for their deprivation, i.e., workers' compensation. The high court's holding in *Daniels* that a preclusion of a remedy by way of sovereign immunity is not constitutionally infirm establishes that the limited workers' compensation relief suffers no constitutional infirmity. Inasmuch as *Bivens*-type constitutional torts are created by courts only where no remedy is otherwise available, we decline to create such a remedy in the present action.

The principles of *Carlson* v. *Green, supra,* 446 U.S. 14 [64 L.Ed.2d 15, 100 S.Ct. 1468] are not at odds with this conclusion. In that case the court determined that only a uniform federal rule of survivorship of *Bivens* actions would comport with the goal of protecting federal constitutional rights. The court therefore affirmed a determination that *Bivens* principles superceded more restrictive state laws regarding survivorship of actions. However, in that case it was conceded that the complaint "pleaded a violation of the Eighth Amendment's proscription against infliction of cruel and unusual punishment, giving rise to a cause of action for damages under *Bivens* . . ." and that decedent could have maintained the action had he survived. (*Id.,* 446 U.S. at p. 17, fn. omitted [64 L.Ed.2d at pp. 22-23, 100 S.Ct. at

p. 1471].) It is therefore apparent the case lends no support to an attempt to *create* a *Bivens* cause of action where none has previously existed.

### CONCLUSION

For the foregoing reasons, the trial court did not err in granting defendants' motion for summary judgment. In this conclusion we are mindful of Justice Clark's words accompanying the decision of *Johns-Manville, supra* (27 Cal.3d 465, 487 [dis. opn. of Clark, J.]): "Courts may interpret the Constitution and statutes. But to ignore constitutional provisions granting the Legislature plenary authority, and legislative enactments expressly and unambiguously dealing with applicable law, is not only judicial usurpation of the legislative function but also judicial arrogance destructive of society's confidence in the rule of law.

". . . . . . . . . . . . . . . . . . . . . . . .

"We all have compassion for those incurring industrial injury or industrial disease. The workers' compensation law reflects that compassion—providing compensation for all employees suffering employment injury or illness—whether or not the employer is at fault."

The judgment is affirmed.

Kaufman, J., and McDaniel, J., concurred.