145 F.3d 1339
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Cheryl Marie MCLANDRICH, a minor, and Paul Michael
McLandrich, a minor, by and through their guardian
ad litem, Linda McLandrich, Plaintiffs-Appellants,
v.
SOUTHERN CALIFORNIA EDISON COMPANY, San Diego Gas and
Electric, Combustion Engineering, Inc., and Does 1
through 100, inclusive, Defendants-Appellees.
Kristy Mettler, individually and as successor in interest to
Jason Mettler, deceased, Krystal Mettler and Ryan Mettler,
individually and as successors in interest to Jason Mettler,
deceased, by and through their guardian ad litem Prescott E.
Cogswell, Plaintiffs-Appellants,
v.
Southern California Edison Company, San Diego Gas and
Electric, Combustion Engineering, Inc., Institute
of Nuclear Power Operations, and Does 1
through 500, inclusive,
Defendants-Appellees.
 Nos. 96-56362, 96-56418.
D.C. No. CV-95-151-RBB.
D.C. No. CV-95-1063-NAJ.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 4, 1997.**
Decided May 28, 1998.
 
 Appeals from the United States District Court for the Southern District of California, Rudi M. Brewster, District Judge, Presiding, Napoleon A. Jones, Jr., District Judge, Presiding.
 Before FERGUSON, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 All parties are familiar with the facts, and we do not repeat them here except as necessary. In California, workers' compensation provides the exclusive remedy for most workplace injuries. An employee may recover damages in an action at law only if he comes within certain exceptions to this exclusivity. Cal.Lab.Code §§ 3600(a), 3602(a). There are two exceptions of potential relevance to these cases: the "fraudulent concealment" exception and the "outside normal expectations" exception. Finding neither exception to be applicable, the district court granted summary judgment to the defendant Southern California Edison Co. ("SCE"). We affirm.
 
 
 3
 * To invoke the "fraudulent concealment" exception, a plaintiff must prove three elements: (1) the employer knew of the employee's injury and its connection to employment; (2) the employer concealed that knowledge from the employee; and (3) the concealment resulted in an aggravation of the employee's injury. See Foster v. Xerox Corp., 40 Cal.3d 306, 311, 219 Cal.Rptr. 485, 707 P.2d 858 (Cal.1985). California courts have made clear that the first element requires a plaintiff to prove actual knowledge of the specific injury to the plaintiff and its connection to the workplace. See, e.g., id. at 312, 219 Cal.Rptr. 485, 707 P.2d 858. Although the plaintiff can prove this knowledge through circumstantial evidence, he must indeed prove knowledge: mere awareness of a risk, even a substantial risk, is insufficient. See, e.g., id. ("Such knowledge is essential to establish a claim ... because defendant obviously could not be charged with concealing matters which it did not know."); Santiago v. Firestone Tire & Rubber Co., 224 Cal.App.3d 1318, 1331, 274 Cal.Rptr. 576 (Cal.Ct.App.1990) (emphasizing that neither constructive nor imputed knowledge is sufficient to trigger statutory liability); Stalnaker v. Boeing Co., 186 Cal.App.3d 1291, 1300-01, 231 Cal.Rptr. 323 (Cal.Ct.App.1986) (rejecting plaintiff's proposed exception for "substantial certainty " of harm "as not only unsanctioned in law and insufficiently warranted in this case, but as standardless and unlimited" (emphasis added)).
 
 
 4
 The plaintiffs contend that SCE had actual knowledge of Mettler's and McLandrich's cellular injuries.[1] According to the plaintiffs, the evidence of actual knowledge is found within SCE's own training manual.[2] However, the training manual indicates only that SCE was aware of the risk of cellular damage. The manual clearly speaks of "probability factors," not definitive truths. (See, e.g., McLandrich Excerpts of Record at 1258). The manual states that "[r]adiation can also damage chromosomes in a cell," not that it necessarily will cause such damage. Id. (emphasis added). Thus, regardless of how much radiation leaked, the plaintiffs have not shown that SCE might have had actual knowledge of their injuries; they have shown only awareness of a risk. Even if this risk rose to the level of "substantial certainty," that is not enough for the plaintiffs to get past summary judgment. Stalnaker, 186 Cal.App.3d at 1300-01, 231 Cal.Rptr. 323. Because there is no evidence that anyone at SCE had actual knowledge of the alleged cellular injuries, the district court did not err.[3] The "fraudulent concealment" exception to the exclusivity of workers' compensation is not available to the plaintiffs.
 
 II
 
 5
 The Mettler and McLandrich plaintiffs also claim that SCE's conduct falls within another exception to the exclusivity provisions of workers' compensation--an exception for conduct outside the expectations inherent in the normal employment contract. The exception is not, however, applicable to the cases before us. The California Supreme Court has explicitly cautioned:
 
 
 6
 [W]e do not mean to suggest that regulatory crimes such as violations of health and safety standards or special orders are actions outside the normal course of employment. On the contrary, the Act includes such regulatory crimes within its scope. It is an expected part of the compensation bargain that industrial injury will result from an employer's violation of health and safety, environmental and similar regulations.
 
 
 7
 Fermino v. Fedco, 7 Cal.4th 701, 723 n. 7, 30 Cal.Rptr.2d 18, 872 P.2d 559 (Cal.1994) (citing Johns-Manville Prods. Corp. v. Superior Court, 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948 (Cal.1980), for the proposition that workers' compensation is the only remedy even if a company willfully disregards the government's asbestos regulations) (emphasis added). Indeed, recognizing an exception to workers' compensation would run counter to the California legislature's express intent: California Labor Code § 4553.1 makes clear that the State intended increased workers' compensation --and not the elimination of workers' compensation exclusivity--as the penalty for the serious and willful misconduct that the plaintiffs allege against SCE. See Cal.Lab.Code § 4553.1. Thus, the "outside normal expectations" exception is not available to the plaintiffs.
 
 III
 
 8
 Because neither exception applies, workers' compensation is the plaintiffs' exclusive remedy. The district court did not err in granting summary judgment to SCE.
 
 
 9
 AFFIRMED.
 
 
 10
 FERGUSON, Circuit Judge, dissenting.
 
 
 11
 I dissent because the record contains strong evidence that Southern California Edison knew that the employees suffered cellular damage from the leaking radiation and fraudulently concealed that knowledge from them. Because the evidence raises triable issues of fact, summary judgment was improvidently granted.
 
 
 12
 The facts of this case are nearly indistinguishable from Johns-Manville Products Corp. v. Superior Court of Contra Costa County, 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948 (Cal.1980), the seminal case in which the California Supreme Court set out the fraudulent concealment exception to the exclusivity of worker's compensation. In Johns-Manville, the employee alleged that the defendant had long known that exposure to or the ingestion of asbestos was "dangerous to health." Id. at 469, 165 Cal.Rptr. 858, 612 P.2d 948. So too here, the employees have presented evidence that Southern California Edison has long known that radiation damages one's cellular system. Like the plaintiffs in Johns-Manville, the employees in this case have also presented considerable evidence linking radiation exposure to cellular damage.
 
 
 13
 Furthermore, the employees have provided evidence that Southern California Edison had actual knowledge of their cellular injuries. Internal memoranda indicate that during the 1980's, Southern California Edison knowingly operated its San Onofre Nuclear Generating Facility with more than 100 defective fuel rods. Despite the fact that the leaking radioactive particulate matter spread throughout the plant and into the community, Southern California Edison failed to implement a sufficient radioactive safety program and was eventually penalized by the Nuclear Regulatory Commission. Finally, Southern California Edison knew that the personal monitoring devices it provided for its employees were unable to detect the leaking radioactive fuel fragments.
 
 
 14
 A reasonable jury could conclude from this evidence that Southern California Edison knew of the employees' cellular injuries and fraudulently concealed this knowledge by purposely using monitoring devices that could not detect the radioactive matter to which they were exposed. As in Johns-Manville, the monitors lulled the employees into a false sense of security and induced them to continue to work under hazardous conditions. See id. at 477, 165 Cal.Rptr. 858, 612 P.2d 948. The continued exposure to radiation aggravated the employees' initial injuries and eventually caused their deaths.
 
 
 15
 In fact, the deliberate use by Southern California Edison of monitoring devices which underrecorded the true amount of radiation and the deaths of employees caused by radiation rise not only to a valid civil suit for damages but also to a possible criminal prosecution for homicide. In People v. Penny, 44 Cal.2d 861, 879, 285 P.2d 926 (1955), the California Supreme Court held that an act which is made in disregard of human life or an indifference to consequences constitutes the basis for involuntary manslaughter. In People v. Rodriguez, 186 Cal.App.2d 433, 440, 8 Cal.Rptr. 863 (1960), the California Court of Appeals stated that the fundamental requirement fixing criminal responsibility is knowledge that the act tended to endanger life. The intentional use of the false monitors fits clearly within these rules.
 
 
 16
 The majority's opinion, if followed by the state courts, effectively eviscerates the fraudulent concealment exception laid out by the California Supreme Court in Johns-Manville and later codified by the state legislature. Under the majority's standard, absent a report by a company doctor that is hidden from the employee, no circumstantial evidence will suffice to prove an employer's actual knowledge of injury. Such a result flies in the face of state court precedent which provides that plaintiffs may prove actual knowledge with circumstantial evidence. See, e.g., Ucello v. Laudenslayer, 44 Cal.App.3d 504, 514 n. 4, 118 Cal.Rptr. 741 (Cal.Ct.App.1975); Sperling v. Hatch, 10 Cal.App.2d 743, 748, 52 P.2d 537 (Cal.Ct.App.1954); Young v. Carlson, 128 Cal.App.2d 743, 748, 276 P.2d 23 (Cal.Ct.App.1954).
 
 
 17
 The majority's rule also completely ignores precedent in which no such evidence could have been presented. In Barth v. Firestone Tire & Rubber Co., 673 F.Supp. 1466, 1468 (N.D.Cal.1987), for example, the plaintiff was allowed to proceed despite the fact that his supervisors could not have had actual knowledge of his latent, as yet undiagnosable diseases. Similarly, in McDonald v. Superior Court of Los Angeles, 180 Cal.App.3d 297, 303 n. 7, 225 Cal.Rptr. 394 (Cal.Ct.App.1986), the court observed that the fact that asbestos-related diseases may manifest themselves many years after the initial injury does not preclude a plaintiff from alleging that a job-related injury did occur prior its manifestation. The plaintiff in such a case obviously could not present the type of smoking gun evidence required by the majority today. Both of these cases were decided after and are not precluded by Foster v. Xerox Corp., 40 Cal.3d 306, 219 Cal.Rptr. 485, 707 P.2d 858 (Cal.1985).
 
 
 18
 The majority rewards Southern California Edison for its willful ignorance and discourages employers from implementing preventive medical programs which might unearth unwanted information. The majority has lost sight of the public policy which inspired the creation and codification of the fraudulent concealment exception. My only consolation is that the state courts will not be obligated to follow the majority's rule. See Jones v. Heskett, 106 F.3d 923, 928 (9th Cir.1997); Teaman v. Wilkinson, 59 Cal.App.4th 1259, 1266 n. 5, 69 Cal.Rptr.2d 705 (1997).
 
 
 
 **
 The cases were argued separately, but because of the similarity in the facts and legal issues, we will decide them together
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We assume, without deciding, that cellular damage constitutes "injury" for purposes of the "fraudulent concealment" exception
 
 
 [2]
 The Mettler plaintiffs also point to two purportedly expert declarations to support their claim of actual knowledge. Even if these declarations are admissible, however, they do not show what the plaintiffs assert. The declaration of Dr. Dollinger merely sets forth his (vague) claims regarding the state of medical knowledge in 1996, and so has no relevance to what SCE must have known a decade earlier. The declaration of Mr. Snyder does not even address what SCE knew about cellular radiation effects
 
 
 [3]
 McLandrich contends that, in addition to the cellular damage, he also suffered from stomach pains. As McLandrich notes, SCE had actual knowledge of these pains. However, this knowledge is insufficient for triggering the "fraudulent concealment" exception. The McLandrich plaintiffs failed to offer any evidence showing that the same people who knew of the symptoms were aware of their significance, as required by California law. See Foster, 40 Cal.3d 306, 312, 219 Cal.Rptr. 485, 707 P.2d 858 (Cal.1988)