Filed 12/4/14  Ibrahim v. Extreme Auto Recovery CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| SAEED J. IBRAHIM,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>EXTREME AUTO RECOVERY, INC.,<br><br>        Defendant and Respondent. | A138663<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-11-508375) |

Extreme Auto Recovery, Inc. (Extreme Auto) attempted to repossess a vehicle from Saeed J. Ibrahim.  Ibrahim sued Extreme Auto for multiple torts and civil rights violations related to the attempted repossession.  The trial court granted Extreme Auto's motion for summary judgment.  We affirm.

## I.    BACKGROUND

On June 23, 2011, Ibrahim filed a pro se action against Extreme Auto for false arrest and imprisonment,[1] assault and battery, intentional and negligent infliction of emotional distress, negligent hiring, retention, supervision and assignment (hereafter negligent hiring), and violations of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.).  Extreme Auto moved for summary judgment.  We review the evidence submitted on the

---

[1] In the caption of the first amended complaint, Ibrahim referred to his first cause of action as "false allegation and defamation."  In the body of the complaint, he referred to it as "false arrest and imprisonment" and cited Penal Code section 237, which in subdivision (a) sets the punishment for criminal false imprisonment.  In the summary judgment papers, Ibrahim did not dispute that the claim was for false arrest and imprisonment.

summary judgment motion in the light most favorable to Ibrahim, the nonmoving party.[2] (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

Ibrahim purchased a Lincoln Towncar in 2006 or 2007 from Enterprise Rent-A-Car. He signed a contract allowing the seller to repossess the vehicle if he failed to make monthly payments. Sometime before February 2010, Ibrahim missed monthly payments on the vehicle and received a demand for payment. By February 22, 2010, there had already been two attempts to repossess the vehicle.

On February 22, 2010, Amina Amin Bamalli, Ibrahim's wife, called Ibrahim to report that a tow truck was blocking their driveway. Ibrahim drove home in his Audi and unsuccessfully asked the tow truck driver, Daniel Jones, to move his truck. Ibrahim then drove over his neighbor's driveway to maneuver the Audi into his driveway. Ibrahim's Audi never came into contact with Jones or any part of the tow truck. After Ibrahim parked, he and Jones got out of their vehicles, and Jones said, " 'Oh, now so you going to run me over? Nigger.' " Jones took a swing at Ibrahim, but did not strike him. Ibrahim walked into his house. Ibrahim did not fear for his own physical safety, but he feared for the safety of his wife and child who were inside the house because Jones would not leave.

Jones called 911 and told police that Ibrahim had hit him with the Audi. Officers arrived and approached the gate of Ibrahim's house. For 20 minutes, Ibrahim spoke to officers at the gate in a cordial, professional and courteous manner, and explained that he had not hit Jones with the car. When officers asked him to open the gate, he asked them why and did not comply. An officer then pointed a gun at Ibrahim's head and said, "Who the F**k does this guy think he is? I'll blow his F***g head off." Ibrahim turned to walk into his house. Officers broke down Ibrahim's gate, ordered Ibrahim down, pushed him to the ground, knelt on his back, and handcuffed him.[3] Ibrahim was charged with delaying or obstructing a police officer.

---

[2] The trial court overruled Ibrahim's evidentiary objections.

[3] Ibrahim filed a separate lawsuit against the City and County of San Francisco and individual police officers. That case was removed to federal court, where Ibrahim obtained pro bono counsel, and settled in February 2012.

After the police left, Jones continued to block Ibrahim's driveway for about two hours, repeatedly banged on the garage door, and demanded that Bamalli let him into the house or garage. About two weeks later, Jones approached Bamalli when she was in a playground across from the Ibrahim house and loudly threatened that he would make sure Ibrahim went back to jail if the Lincoln Towncar was not returned. A couple of weeks after that, Jones followed Bamalli as she walked home from the grocery store and made a similar threat.

*Motion for Summary Judgment*

Extreme Auto argued in its moving papers that Ibrahim failed to state valid claims for false arrest and imprisonment, assault and battery, and emotional distress because Ibrahim's evidence showed he was detained and beaten by the police, not Jones. Ibrahim argued in opposition that Jones *caused* the police to arrest Ibrahim via a false crime report, which led to a foreseeable beating. Extreme Auto responded that Jones's crime report was absolutely privileged under Civil Code section 47 even if it was maliciously false, and that the police beating was not a foreseeable result of the crime report. As to the other causes of action, Extreme Auto argued Ibrahim failed to establish all elements of the claims.

The trial court granted summary judgment for Extreme Auto. The court agreed the crime report was absolutely privileged under Civil Code section 47, subdivision (b), thus disposing of the false arrest and imprisonment, assault and battery, emotional distress, and civil rights claims. The court further ruled there was no legal authority to hold Extreme Auto liable for an assault and battery committed by police, and no grounds existed for a negligent hiring claim because there was no evidence Jones himself committed a tort.

## II.　DISCUSSION

A.　*Extreme Auto Properly Raised the Litigation Privilege on Reply*

Ibrahim argues on appeal that the litigation privilege was a new argument that Extreme Auto improperly raised for the first time in his reply brief on the summary judgment motion. We disagree.

First, Ibrahim did not raise this objection in the trial court. After the reply was filed, Ibrahim personally appeared at the hearing on the motion and presented argument to the court. He did not argue that the litigation privilege had been improperly raised in the reply brief. Nor did he object when the court ruled from the bench, as it had in its tentative ruling, that summary judgment would be granted largely on the basis of the privilege. Nor did Ibrahim move to set aside the court's written order on that ground. Accordingly, the argument is forfeited.[4] (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.)

Second, the argument lacks merit. In his first amended complaint, Ibrahim alleged that "John Doe" (apparently Jones) personally assaulted him and caused him to be arrested; that Doe defendants (apparently including Jones) repeatedly kicked and punched him, causing him serious and lasting injuries; and that "Doe defendant" (apparently Jones) effected a private person's arrest of Ibrahim after the police arrived. On his battery cause of action, Ibrahim alleged he was attacked and beaten by Extreme Auto employees. Ibrahim did not clearly allege that Jones was liable because he committed acts that caused *others* to assault, batter or arrest Ibrahim. In its moving papers, therefore, Extreme Auto appropriately asked the court to grant summary judgment on the false arrest, assault and battery and infliction of distress claims on the ground that Ibrahim had not produced evidence that, as alleged in the complaint, Extreme Auto employees assaulted, battered or arrested Ibrahim.

Not until it received Ibrahim's opposition brief did Extreme Auto learn of Ibrahim's new claim that acts by Jones *caused* the police to beat and arrest Ibrahim. Because Ibrahim had not amended his complaint to reflect his new theory, Extreme Auto was not required to respond to it at all. (See *Cochran v. Linn* (1984) 159 Cal.App.3d 245, 250 ["moving party need not '. . . refute liability on some theoretical possibility not included in the pleadings' "].) Extreme Auto chose to respond to the new argument,

---

[4] While Ibrahim represented himself in his opposition papers and at oral argument, he is not exempt from compliance with the same rules applicable to counsel. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) He " 'is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.]" (*Id.* at p. 1247.)

4

rather than insisting on amended pleadings, and Ibrahim cites no rule of law that forbade it from doing so.  Because Extreme Auto replied to the argument and the issue was thus fully briefed in the trial court, the court acted properly in ruling on the issue.  (See *Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302.)  Indeed, even when a moving party improperly presents new *evidence* in reply, "the trial court's consideration of such additional evidence is not an abuse of discretion so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material."  (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [trial court had discretion to consider new evidence in summary judgment reply papers when plaintiffs did not object to the new evidence, did not request a continuance, or suggest that additional evidence could be presented].)[5]  Here, Ibrahim had an opportunity to respond to the litigation privilege argument at the hearing and could have requested an opportunity to file a surreply.  There was thus no procedural impropriety.

B.      *The Litigation Privilege Barred Ibrahim's Claims*

Ibrahim argues Extreme Auto can be held liable in tort notwithstanding the litigation privilege, and that he should have been allowed to amend his pleadings accordingly.  We are not persuaded.

The Supreme Court has squarely held that "when a citizen contacts law enforcement personnel to report suspected criminal activity on the part of another person[,] . . . such statements are privileged pursuant to Civil Code section 47, subdivision (b) . . . , and can be the basis for tort liability only if the plaintiff can establish

---

[5] Ibrahim asserted that he had been unable to obtain evidence on his negligent hiring claim because he had not been able to depose Jones.  Ibrahim asked the court to order Jones produced.  That issue became moot when the court ruled that there was no evidence Jones committed any actionable tort and denied the request.  The case, in any event, proceeded as to Jones individually.  Ibrahim asked for a continuance at oral argument, but only so that he could try to retain counsel for oral argument.  Extreme Auto noted that it had been necessary to refile the motion and continue the trial date because Ibrahim had denied receipt of the original motion papers, and that Ibrahim had ample opportunity to obtain counsel since filing his complaint.  The court denied the request for continuance.  Neither ruling is challenged in this appeal.

the elements of the tort of malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 355, fn. omitted (*Hagberg*).)  The privilege is absolute, applying "without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice." (*Id.* at p. 361.)  The absolute privilege serves to protect "both the effective administration of justice and the citizen's right to access to the government for redress of grievances." (*Id.* at pp. 360–361.)

Ibrahim cites *Pool v. City of Oakland* (1986) 42 Cal.3d 1051 (*Pool*) in support of his argument that Extreme Auto could be held liable for causing his arrest.  In *Pool*, a supermarket was held liable for negligent infliction of emotional distress when it falsely reported to police that a customer had tendered a counterfeit $100 bill, resulting in the customer's arrest.  Store management had inaccurately informed employees that a bill would be counterfeit if it did not include the motto, "In God We Trust."  The arrested customer had tendered a noncounterfeit bill that did not include that motto.  (*Id.* at pp. 1056–1058.)  The supermarket did not dispute that it owed its customers a duty of due care, and the Supreme Court ruled that the evidence supported the jury's finding of negligence liability.  (*Id.* at pp. 1059, 1062–1064, 1068.)

*Pool*, however, did not consider the litigation privilege.  *Hagberg*, decided after *Pool*, did consider the litigation privilege and held it precludes all tort liability arising from a crime report to police except for malicious prosecution.  (*Hagberg, supra,* 32 Cal.4th at p. 360.)  Thus, *Pool* provides no support for the proposition that Extreme Auto can be held liable for negligent infliction of emotional distress by virtue of a "false" report to police.

Ibrahim argues his allegations supported claims for civil extortion and tortious repossession of property, providing a basis for liability notwithstanding the litigation privilege.  In support of this argument, he cites *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), but that case is inapposite.  *Flatley* holds that indisputably or concededly illegal acts such as extortion do not qualify as protected speech for purposes of applying the anti-SLAPP statute, Code of Civil Procedure section 425.16.  (*Flatley,* at pp. 305, 333.)

The defendant in that case had argued his extortionate prelitigation settlement demand letters were communications covered by the litigation privilege. (*Id.* at pp. 305, 322.) The court assumed without deciding that the litigation privilege applied, and ruled the communications nevertheless were not covered by the anti-SLAPP statute. (*Id.* at p. 322.)

The *Flatley* Court did not decide whether the litigation privilege applied to the extortion claim; therefore it is not authority for the proposition that the privilege is inapplicable to an extortion claim by Ibrahim against Extreme Auto. *Flatley* is, in any event, distinguishable because that defendant made only a "sham" report of crime to the police (if reported at all), resulting in no police action or investigation. (*Flatley, supra,* 39 Cal.4th at pp. 331–332.) The basis for liability in *Flatley* was not a report to law enforcement, but the numerous and repeated threats made to publicly disclose alleged sexual misconduct. (*Id.* at p. 330.) Here, Jones did not *threaten* to make a report to police unless Ibrahim surrendered the vehicle. He actually made a crime report directly to police, alleging that Ibrahim had assaulted him. The other cases cited by Ibrahim are inapposite for the same reason. (*Cohen v. Brown* (2009) 173 Cal.App.4th 302, 317 [extortionate threat to pursue State Bar complaint unless plaintiff dropped monetary claim was not protected activity under anti-SLAPP suit]; *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, 806 [extortionate threat to report plaintiff to authorities unless he paid damages was not protected activity under anti-SLAPP statute].)

Under *Hagberg*, the litigation privilege bars claims for all torts other than malicious prosecution, including the torts of civil extortion and tortious repossession of property, that are based on Jones's crime report to the police. Ibrahim did not assert a malicious prosecution claim in the trial court and he does not argue on appeal that he stated or could state such a claim. Therefore, the trial court properly granted summary judgment.

## III.   DISPOSITION

The judgment is affirmed. Ibrahim shall bear Extreme Auto's costs on appeal.

7

_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
NEEDHAM, J.